GIBSON et al. *v.* FOSTER et al.

| | |
|---|---|
| 2 | 503 |
| 44 | 619 |
| 2 | 503 |
| 51 | 1308 |
| 2 | 503 |
| 112 | 535 |
| 2 | 503 |
| 120 | 493 |
| 120 | 497 |
| 2 | 503 |
| f125 | 403 |

In cases of attachment, as in others, all irregularities in the proceedings anterior to the judgment, except an entire want of citation, must be corrected by appeal, or in some direct proceeding instituted before the same court, to set aside such irregular proceedings; their validity cannot be questioned collaterally.

Previous to the promulgation of the Code of Practice, and the repeal of the Spanish laws by the stat. of 25 March, 1828, s. 25, the fact of the judge being interested in the event of a suit did not render the judgment a nullity. Unless the judge was recused on the oath of a party it was his duty to decide the cause. 3 Part. tit. 4, l. 22.

The provision of art. 12 of the Civil Code that, whatever is done in contravention of a prohibitory law is void although the nullity be not expressly declared, is taken from the 5th law, of the 14th title, of the 1st book of the Justinian Code, and must be interpreted in connection with another rule, adopted in the jurisprudence established under that Code, that *Multa fieri prohibentur, quæ si facta fuerint obtinent firmitatem.*

Judicial proceedings before a competent tribunal will not be treated as nullities for defects of form only, but in cases expressly provided for by law, or within the legal intendment of art. 12 of the Civil Code, as fixed by the jurisprudence of the country from which that article was adopted.

After the lapse of twenty years, a probate sale will not be annulled, on an allegation that the judgment ordering the sale was rendered without the citation or appointment of an attorney to represent the absent heirs, supported by the evidence of a judge of the court, subsequently appointed and then in office, that he had examined the records without being able to find the appointment of an attorney to represent the absent heirs, or any citation issued, before the judgment ordering the sale, to any one purporting to be the attorney of such heirs. *Per Curiam:* The ground taken goes to charge the curator and the court with culpable neglect of duty, and it must be proved by the party maintaining it, though involving a negative. In the remote parishes of this State, for the want of suitable buildings and suitable keepers, proper care has not been taken of judicial records; many have been entirely lost, and, in many cases, those which remain are incomplete; and if the validity of titles acquired under judicial sales within the last forty years were to be tested by the judicial records in existence at any subsequent period, time, instead of healing, as it should, the defects of those titles, would gradually weaken, and eventually destroy, them. The presumption *omnia rite acta,* which attaches to judicial proceedings, is not to be rebutted by the remote presumption resulting from the evidence adduced in this case.

A judgment ordering the sale of the property of a succession, rendered at the suit of the curator, without the appointment of an attorney to represent the absent heirs, is not a nullity. *Per Curiam:* The curator represented the succession, and had the capacity to provoke a sale of its property. The stat. of 22 February, 1817, making it his duty to prove, contradictorily with the attorney of absent heirs, that the sale was advantageous or necessary, is merely directory; it contains no prohibitory clause; and although its non-observance may, in certain cases, subject the curator to damages at the suit of the absent heirs, it is one of those informalities anterior to judgment, which cannot be enquired into collaterally.

APPEAL from the District Court of Concordia, *Curry,* J. This is a petitory action, brought by *Simeon L. Gibson* and others, against *Foster* and *Reese,* to recover a tract of land; they claim as heirs of *Simeon Gibson,* deceased. *Foster* disclaimed title, and prayed to be dismissed from the suit, which was done with the consent of the plaintiffs. The other defendant, *Reese,* filed a general denial; he claims title, but does not mention from what source. *Mary Sargent* and others filed a petition of intervention, claiming the land against both plaintiffs and defendants. To this petition of intervention, the plaintiffs answered by a general denial. The defendant filed a similar answer. The death of the intervenor, *Mary Sargent,* having been suggested, her executor,

*Sargent*, was allowed to intervene. He, as executor, and *Stockton*, as tutor of the minors *Thompson*, filed a petition of intervention, adopting tho petition theretofore filed by the intervenor. The plaintiffs afterwards filed the following plea: "The plaintiffs plead the prescription of ten years against the estate of *Jonathan Thompson*, as against a vacant succession; and the prescription of five years against informalities in public sales, and prescription generally against the claim of intervenors."

The capacity of the plaintiffs and of the intervenors was admitted; it was also admitted that *Reese*, the defendant, is the legitimate son of *Ebenezer Reese*, the original grantee of the land in controversy. All the parties claim under *Ebenezer Reese*: the defendant *Reese*, as son and heir; the plaintiffs and intervenors, in virtue of a sheriff's sale, made to *John Taylor*, in the year 1812, under an execution, issued in the case of *Seth Lewis* v. *Ebenezer Reese*. Plaintiffs and intervenors offered the record in that suit to establish said sheriff's sale. It was admitted by the defendant, that the sheriff's deed to *John Taylor* was duly recorded in the proper office, and that the heirs of *Taylor*, after his death, conveyed all their interest in the land to *Jonathan Thompson*, and that their deed was duly recorded. The plaintiffs asserting that they had succeeded to *Thompson's* interest, set up a probate sale of the land, provoked by *Davis*, the curator of the succession of *Thompson*, and for that purpose offered several documents containing parts of the probate proceedings, among which are the appointment of *Davis* as curator, the inventory and appraisement, his petition for a sale of the effects of the succession, and the judges order thereon, the procès-verbal of the sale, and the deed of *Davis*, the curator, to *McNeil*, to whom the land had been adjudicated at the alleged probate sale; it was admitted that all the interest of *McNeil*, if any he had, passed by several mesne conveyances, to the father of the plaintiffs. To show that the estate owed debts in Mississippi, plaintiffs offered in evidence proceedings in the Probate Court of Adams County, Mississippi, provoked by the administrator of *Thompson's* estate in that State. The intervenors contended that the probate sale, provoked by the curator, *Davis*, was illegal and void, for several reasons, the chief of which was the failure to appoint an attorney to represent the absent heirs. They offered the testimony of the judge of the Probate Court, to show that no attorney for absent heirs was appointed before the year 1831; the probate sale relied on having taken place on the 22d of February, 1825. It was admitted by the intervenors that they did not claim the succession of *Thompson* till the year 1839, and that they made no application to the Probate Court of Concordia, to be recognised as heirs, &c., till the year 1843. It is admitted by all parties, that no person ever was in possession of the land until the defendant took possession, a few months prior to the institution of this suit. The court below rejected the demand of the intervenors, and gave judgment in favor of the plaintiffs, and against the defendant, for the land in controversy. From this judgment the defendant and intervenors appealed.

*Stacy* and *Sparrow*, for the plaintiffs. Both the judicial sales were made by virtue of judgments of courts of competent jurisdiction for the payment of debts, which judgments protect the purchasers under them. Those judgments stand unreversed and unannulled, and cannot be attacked collaterally in the manner attempted; and so long as they stand the sales must stand also. See *Lallanne's Heirs* v. *Moreau*, 13 La. 432. *Thompson* v. *Tolmie*, 2 Peters, 166. 1 Peters, 339. 3 La. 518. *McComb's Heirs* v. *Dunbar*, 14 La. 146. *Graham's Heirs* v. *Gibson*. C. P. arts. 604, 605, 606, 608, 610, 611. *Bank of the United*

*States* v. *Bank of Washington*, 6 Peters, 8. *Voorhees* v. *Bank of the United States*, 10 Peters, 449. *Wise* v. *Sloman*, 3 Cranch, 300.

The only objection to the validity of the sale of the property of the succession of *Thompson* is the supposed omission to appoint an attorney of absent heirs. There is no proof that one was not appointed. All that is proved is, that the records of the Probate Court do not exhibit proof of any appointment. This at best only furnishes a presumption of the fact alleged. What are the adverse presumptions? As to the proceedings of courts, that *omnia rite acta*, that they have done their duty. He who alleges the contrary must establish the fact by positive proof. He who charges a culpable breach or omission of duty, especially upon any officer, is bound to prove it, although it involve a negative. *Hicks and Wife* v. *Martin*, 9 Mart. 48. *Morgan* v. *Mitchell*, 3 Mart. N. S. 576. These proceedings were had more than twenty years ago, before the existence of our present Codes, in a new, sparsely settled country, where the records of the courts were irregularly and carelessly kept. Is not the legal presumption, then, a reasonable one in point of fact, that the legal and necessary acts were done, the appointment of attorney made, and that the papers have been since lost or abstracted? See *Fink* v. *Lallande*, 16 La. 556. 16 La. 433. 2 Rob. 377. Purchasers have not the custody of such muniments of title, and it would be hard that they should be made to suffer from their loss. Much must be presumed in favor of ancient titles, and of every link in the chain composing them. 12 Peters, 410.

But were we to admit that no attorney ever was appointed, it could not have the effect of annulling the sale as to innocent and ignorant purchasers. Previous to the act of 1817, the attorney of absent heirs had no voice in making the sales. By that act an advisory power was conferred upon him. The record shows the succession of *Thompson* to have been deeply insolvent. The heirs of *Thompson* then had no right to be represented; his succession was a matter of interest only to the creditors. *Poultney's Heirs* v. *Cecil's Executor*, 8 La. 321.

*Frost*, for the defendants. 1. A judgment rendered without citation, or appearance, is a nullity, and may be attacked collaterally. 5 Mart. 465. 6 Ib. 756. 5 Ib. N. S. 656. 10 La. 328. 8 Mart. N. S. 145. 14 La. 38. 5 Rob. 418. 4 Peters, 474. 2 Peters, 163. 2. A citation or appearance is necessary to give jurisdiction. 5 Howard Miss. Rep. 517. 1 Smedes and Marshall, 368. 5 Wendell, 75. 3. Where a party relies on a judgment rendered by summary or statutory process, the record must show a compliance with the requisites of the statute. 3 Littell, 40. 3 Dana, 373. 10 Yerger, 314. 7 Ib. 366. 6 Ib. 482. Har. and John. 36, 130. 8 Cowen, 379. 3 Ib. 208. 20 Pick. 421. 4 Peters, 359, 466. 4. Where a form is given by statute it must be strictly followed, particularly in summary or statutory proceedings. 11 Mart. 610. 1 Mass. 426. 5 Howard Miss. 299. 22 Wend. 135. 20 Ib. 249. 2 Smedes and Marshall, 219. 1 Kent. 466. Plowden, 103. 1 Smedes and Marshall, C. R. 188. 3 Smedes and Marshall, 47.

5. Where a judge is interested his judgment is a nullity. 21 Pick. 105.

6. Lapse of time creates a presumption in favor of the regularity of judicial proceedings; but when the record shows affirmatively irregularities, this presumption fails. 2 B. Munroe, 457. 4 Binney, 97.

*H. A. Bullard*, on the same side. Neither the plaintiffs nor the intervenors can succeed in this case, without showing that the ancestor of the defendant was divested of title, by the proceeding in attachment in the case of *Lewis* v. *Reese*. We contend that his title was not divested, because the proceedings against him under the attachment laws existing at that period, were irregular and void.

If there be any principle well settled in all the States, and especially in Louisiana, it is that the forms of law required in cases of attachment against absentees are to be strictly pursued; and that, when the law has required in lieu of a personal citation certain notices and publications, in derogation of the common right to be heard before condemnation, the courts will take nothing for granted, and will require a rigid compliance with all the forms indicated by the statute. The authorities are so numerous on these points, that it is not necessary to refer to them particularly.

This principle applies to tax sales and other *ex parte* expropriations of property. A remarkable case, decided by Chief Justice Marshall, is referred to in the argument. In cases where there has been a judgment after personal service of process, the rule is that, on the production of a sheriff's deed, or judg-

GIBSON
v.
FOSTER.

ment and execution, the party setting up title may rely on the presumption, *omnia recte et rite acta;* but in other cases, such as attachments, he must show the strict regularity of all the proceedings as a substantive part of his title; because otherwise the court would be without jurisdiction *ratione personæ.*

Another principle equally clear is, that the attorney appointed to defend an absentee cannot waive any of the forms of law required to bring the defendant into court. His consent, or neglect, to avail himself of defects in the proceedings, cannot prejudice the absentee.

Starting with these well established doctrines, let us enquire how far the proceedings, as shown by the record, were in conformity with the statutes of 1805 and 1807, then in force.

1st. As to the attachment bond. The act of 1807 requires that the bond should be given in double the amount of the debt sworn to. Now, in this case, the debt sworn to was a certain amount of capital and interest; and the bond was for only double the principal. If the attorney appointed to represent the absentee had moved to set aside the attachment, it cannot be doubted he would have succeeded. This principle was sanctioned by the late court in relation to appeal bonds, when the question arose whether the appeal was suspensive. It seems to me to apply with greater force in cases of attachment, in which great strictness is required. The want of such a bond is a nullity, which the party to be affected may urge at any time.

2d. The writ was not such as the statute required. The writ, and its posting up and service at the last place of abode of the defendant, stand in lieu of a citation. The sheriff is required to post it up in particular places in *french* and *english.* In this case, it is not required in french. At that period petitions were required to be in both languages, whatever may have been the mother tongue of the defendant. See the form of the writ in the statute of 1805. By the existing law, a citation is required. As it stood under the territorial law there was no citation, but the service of the writ in french and english, at the last abode of the defendant, and on the church door, was required in lieu of it. That cannot be dispensed with.

3d. But admitting that the form of the writ was such as the statute required, it no where appears on the record that it was served, as required. The only return of the sheriff is the word "*served.*" Nothing can be taken by intendment in such proceedings. The facts, the manner of service, should have appeared by the sheriff's return, in order that the court might determine whether there was a sufficient compliance with the statute. I repeat that, in attachment cases, *forms* are *substance;* and men cannot be validly deprived of their property without being made parties, either personally by service of citation, or by the publications and notices required by law in cases of attachment.

4th. Suppose, however, the word *served* fulfils the requisites of the law as to service of the writ; yet if the writ itself was defective, and did not require notices to be given in both languages, it cannot be inferred from the return that such notice was given. On the contrary, taking the return as showing a notice as required by the writ, it is not the notice required by the statute.

*Stockton* and *Steele,* for the intervenors. 1. The Parish Court of Concordia was a court of competent jurisdiction, and the sale of the land under its process, as the property of *Ebenezer Reese,* issued on a judgment regularly rendered by said court, conferred a good and valid title on the purchaser, *Taylor,* from whom it passed, by descent, to his heirs, who transferred it to *Thompson.*

2. *Thompson* possessed the land under a good and valid title, which was not legally divested by the pretended probate sale set up by the plaintiffs, and it is, therefore, the rightful property of the intervenors.

3. The pretended probate sale is illegal and void, because: 1st, there was no sufficient showing made to the Probate Court, of the necessity for a sale; 2d, there was no sufficient inventory; 3d, there was no attorney appointed by the court to represent the absent heirs; 4th, there was no reason assigned for the sale; in the order of the judge; 5th, the property did not sell for two-thirds of its appraised value; 6th, the order of court for the sale, did not fix the terms thereof; and the terms on which the property was sold, were not such as was then required and authorized by law.

The counsel for the intervenors maintained in an elaborate argument, the validity of the sale in the suit of *Lewis* v. *Reese,* and the nullity of the probate sale of *Thompson's* succession.

The judgment of the court was pronounced by

Rost, J. The plaintiffs, alleging themselves to be the heirs of *Simeon Gibson*, have instituted this action to recover a tract of land from the defendants. *Foster* disclaimed title. *Reese* filed an answer containing a general denial, and an averment of title in himself. *Mary Sargent* and others intervened, claiming the land against both plaintiffs and defendants. The original parties filed a general denial to the petition of intervention. *Mrs. Sargent*, one of the intervenors, having died after issue joined, her executor, and the tutor of two minor heirs, came into court and adopted the petition of intervention. The plaintiffs subsequently filed the following plea: "The plaintiffs plead the prescription of ten years against the estate of *Jonathan Thompson*, as against a vacant succession; and the prescription of five years against informalities in public sales; and prescription generally against the claim of the intervenor." The court of the first instance gave judgment in favor of the plaintiffs, and both the defendant and the intervenors appealed.

All the parties claim under *Ebenezer Reese*, the original grantee; the defendant, *Reese*, as his son and heir, and the plaintiffs and intervenors, under a sheriff's sale, made to *J. Taylor*, in 1812, at the suit of *Seth Lewis* v. *Ebenezer Reese*. It is admitted by the defendant *Reese*, that the sheriff's deed was duly recorded in the proper office, and that, after the death of *Taylor*, his heirs conveyed the land to *Jonathan Thompson*, by an act also duly recorded. The capacity of the plaintiffs, of the defendant, *Reese*, and of the intervenors, are admitted. It is also admitted that none of the parties ever were in actual possession of the land, until the defendant entered upon it, a few months prior to the institution of this suit.

I. The judgment in the attachment suit of *Seth Lewis* v. *Ebenezer Reese* was rendered by a court of competent jurisdiction, contradictorily with the attorney appointed to represent the absent debtor, and after a reasonable time had been allowed him to correspond with his client and file his answer. Under the laws in force at the time, all errors and irregularities in the proceedings, short of a total want of citation, could only be taken advantage of on a motion to dissolve the attachment, made *in limine litis*. After the trial had begun, that motion was no longer entertained, and the irregularities were considered as cured. *Watson et al.* v. *McAllister*, 7 Mart. 368.

In the case of *Cox* v. *White*, 2 La. 422, the plaintiff contested collaterally the validity of an attachment, on the main ground taken in this case, to wit, the insufficiency of the service of the writ. Judge *Mathews*, in delivering the opinion of the court, said: "Objections are made in the present case to the regularity and legality of the proceedings in the attachment, which, if it were by appeal, or in any other legal shape, now before the court, would perhaps be entitled to great weight. The judgment therein rendered must be considered as *res judicata* between the parties, and as having settled all disputes between them in relation to the property attached, however irregular the proceeding may have been. All defects in the commencement and prosecution of that suit, must be viewed as cured by the final judgment, in relation to all parties who had no complete and vested rights in the property attached, at the time of rendering it."

In cases of attachment, as in others, the settled jurisprudence of the State is that, all irregularities in the proceedings anterior to the judgment, except an entire want of citation, are to be corrected by some direct proceeding before the same court to set them aside, or by appeal; and that their validity cannot be

GIBSON
v.
FOSTER.

drawn into question collaterally. The absolute nullity contended for, as resulting from the interest of the judge in the event of the suit, was not recognised by the laws then in force. Under those laws, judges could be recused on the oath of a party litigant, that he had *miedo y sospecha* of them; and, unless the recusation was made, it was their duty, as it is ours, to proceed and decide. L. 22, tit. 4, Part 3.

It is contended that prohibitory laws have been disregarded, and that, by an express provision of the Civil Code, whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed, C. C. art. 12. This disposition was extracted from the law 5, title 14, book 1st, of the Justinian Code; but the jurisprudence established under it, sanctioned also another rule which has been incorporated in the jurisprudence of all countries; it is the maxim, *Multa fieri prohibentur, quæ si facta fuerint obtinent firmitatem.* These two rules should be interpreted by each other; the first being intended for the maintenance of public order, and reasonable certainty in the muniments of title, and the second for the preservation of property and the rights of labor.

The first rule is considered by all commentators as applying to a very small number of cases, and not even to all cases involving considerations of public order. We conceive that the same thing results, not only from the general tenor of our Codes, but from the very institution of property. Under the doctrine contended for at bar, the surest way to destroy private rights would be to ascend to their origin, and the institution of property would in effect be destroyed by the laws made for its preservation.

It is not however necessary to go farther into that enquiry in the present case. We cannot go beyond the judgment; the laws alleged to have been disregarded in the proceedings subsequent to it were not prohibitory. They do not fall under the rule contended for; and where defects of form only are alleged, we disclaim all power to extend nullities to cases, neither expressly provided for by the lawgiver, nor coming within the legal intendment of art. 12 of the Code, as fixed by the jurisprudence of the country from which it is derived.

II. The only serious objection raised to the validity of the probate sale of the land in the succession of *Jonathan Thompson* is, that no attorney was appointed to represent the absent heirs, and that the decree ordering the sale was not rendered contradictorily with such an attorney, as is required by the act of 1817. The only proof adduced in support of this allegation is the declaration of a subsequent judge of the same court, made at the trial in 1845, that he had searched the records, and had found no appointment of any attorney to represent the absent heirs of *Jonathan Thompson* previous to the year 1831, and no citation issued, before the judgment ordering the sale of the property, to any one purporting to be attorney of absent heirs.[*]

The ground taken by the intervenors goes to charge the curator and the court with a culpable neglect of duty, and it must be proved by them, though it involves a negative. 3 Mart. N. S. 576. 1 Greenleaf, Evid. nos. 19, 20, 21, 80.

Considering the time and the locality when and where these proceedings took place, the evidence alleged is not satisfactory, and would probably not be so in in any case. It is well known that in the remote parishes of the State, for the

---

[*] The order for the sale was made on the 21st January, 1825, and the sale took place on the 22d of February following.

want of suitable buildings and responsible keepers, proper care has not been taken of judicial records; that many are entirely lost; and that those which remain are often in an incomplete and dilapidated state. Much the greater part of the real property of the State is held under probate or sheriff's sales; and if the validity of the titles thus acquired during the last forty years was to be tested by the judicial records as they might exist at any subsequent epoch, time, instead of healing, as it should, the defects of those titles, would gradually weaken, and eventually destroy, them.

GIBSON
*v.*
FOSTER.

The presumption of *omnia rite acta*, which attaches to judicial proceedings, is not to be rebutted by the remote presumption resulting from the evidence adduced in this case. The defendant was not the keeper of the records, and is not bound to account for their loss. There may well have been a curator of absent heirs before 1831, as there was one after that time, and he may have waived the formality of citation. The decree ordering the sale was rendered by a court of competent jurisdiction. We are bound to believe, against mere probabilities, that the judge did his duty, and to presume, at this late period of time, that all the parties interested had notice of the proceedings. 1 Greenleaf, Evid. no. 19.

But if it were true that no attorney had been appointed to represent the absent heirs when the decree ordering the sale was made, that decree would not be an absolute nullity by reason of the omission. The curator was the representative of the succession, and had the capacity to provoke the sale of its property. The act of 1817, making it his duty to prove, contradictorily with the attorney of absent heirs, that the sale was advantageous or necessary, is merely directory; it contains no prohibitory clause; and although its non-observance might, in certain cases, subject the curator to damages at the suit of the absent heirs, it constitutes one of those informalities anterior to the judgment which cannot be inquired into collaterally.

There is no error in the judgment appealed from.

*Judgment affirmed.*