H. CLAY PLEASANTS v. MATTHEW DUNKIN.

1. PROBATE MATTERS—STATUTES CONSTRUED—CONSTRUCTION.— Under the laws in force in 1840, the Probate Courts had power to grant letters of administration on the estates of persons who were not "inhabitants of or resided in the county at the time of their decease." Though this conclusion, as an original proposition, might be questioned, if based alone on a construction of the act of December 20, 1836, entitled "An act organizing the inferior courts, and defining the power and jurisdiction of the same," its correctness is deduced from legislative enactments prior to 1840, in which the power is impliedly recognized, and on the cotemporary and practical construction of the powers of the Probate Court.
2. ADMINISTRATION.—It is no objection to the validity of an administration, under which title is claimed in a collateral proceeding, that the petition for letters of administration contained, with reference to the death of the party on whose estate letters were asked, only the averment that the petitioner "verily believed that D. had de-

parted this life." Such a petition was sufficient to admit evidence
of his death, and it must be presumed that the court did not act
without being satisfied of the fact. It would be most unsafe to
make the validity of an administration depend on the sufficiency of
the petition for letters.

3. ORDER OF SALE—VOID AND VOIDABLE—BONA FIDE PURCHASER.
—The validity of an order of sale of a land certificate, made by the
Probate Court in 1840, did not depend on the regularity of the bond,
or a compliance with all of the regulations prescribed in the Civil
Code of Louisiana. A *bona fide* purchaser was protected by the
decree of the court, if it had jurisdiction; and a decree of sale
would not have been an absolute nullity, even if the court had
omitted to appoint an attorney to represent absent heirs.

4. PROBATE MATTERS—CONVEYANCE—ADMINISTRATORS' SALE.—
On the 3d of March, 1840, the act regulating the duties of probate
courts (Hartley's Dig., art. 995, *et seq.*) had not yet gone into effect,
and a conveyance then made by a judge of probate to a purchaser
at an administrator's sale, ordered by him, in which was recited the
order of sale, the sale, and the payment of the purchase-money, and
which was executed with witnesses, was the appropriate evidence
of an administrator's sale under the laws then in force.

5. EVIDENCE—VARIANCE—TRESPASS TO TRY TITLE —In trespass to
try title, the patent was made an exhibit, and on the trial its intro-
duction in evidence by plaintiff was objected to, on the ground that
it recited, that it was based on a certificate issued on the first day of
January, 1839, while the transcript of the proceedings in probate,
under which plaintiff derived title, showed that plaintiff claimed
under the purchase of a certificate issued on the 11th of January,
1840 : *Held*, That the exclusion of the patent as evidence was error.
Since the patent had been made an exhibit, there could be no vari-
ance; and it was a question of fact, not affecting the admissibility of
the patent, whether, notwithstanding the discrepancy of the date of
the certificate and the patent, the latter did not refer to the certifi-
cate under which plaintiff claimed.

APPEAL from Bastrop. Tried below before the Hon. J.
P. Richardson.

On the 23d of January, 1872, H. Clay Pleasants, as admin-
istrator of the estate of John York, deceased, brought suit
against Matthew Dunkin *et al.* and the heirs of said York,
deceased, to obtain possession of 1476 acres of land in Bastrop
county, patented to the heirs of George W. Davis, deceased.
The petition alleged disseizen, use, and occupation by the

defendants, and prayed for judgment for the land, for rent, and damages.

On March 28, 1872, the appellees, Dunkin and Clark, demurred generally and specially to plaintiff's petition, and urged a misjoinder of parties, in mingling in one suit, as defendants, the appellees, who were alleged to be wrong-doers and in possession of the land, with the heirs of John York, deceased.

On the 28th of March, 1872, the defendant Clark disclaimed any title to the land, but claimed to hold the same as tenant for his co-defendant Dunkin, and asked that all pleas and answers of said Dunkin be received as his also. On the same day, the defendant Dunkin answered. In his answer, he plead "not guilty," and the three, five, and ten years' statutes of limitation.

On the 24th of July, 1872, the defendants amended their answer, and pleaded in bar of plaintiff's right of action the matter which will be found referred to in plaintiff's bill of exceptions.

On July 30, 1873, the defendants filed another amended answer, denying everything which had been alleged by the plaintiff, especially denying that any land certificate was ever issued by the board of land commissioners of Washington county to George W. Davis, on the first day of January, 1839, or on any other day in 1839, or to the heirs of the said George W. Davis in the year 1839, or that the original *bona fide* certificate issued to the heirs of the said George W. Davis ever was located upon the land sued for by plaintiff.

The parties agreed that the plaintiff was the legal administrator of John York, deceased.

The patent attached as an exhibit to the petition recited that it was based on a certificate issued to heirs of George W. Davis, by the board of land commissioners of Washington county, on the first day of January, 1839.

The parties waived a jury, and submitted the cause to the court, who overruled defendant's demurrers, and rendered

judgment in their favor against the plaintiff for costs, and dismissed his suit.

From this judgment, the plaintiff Pleasants appealed. His assignments of error were the negative of the positions assumed by the court below, as the same appears in plaintiff's bill of exceptions.

On the trial, the plaintiff proposed to introduce in evidence—

1. The patent to heirs of George W. Davis, as the same was copied in the exhibit to plaintiff's petition.

2. Transcript of proceedings in the matter of the estate of George W. Davis, deceased, in the Probate Court of Washington county. .

3. *Proces verbal* from Dan. J. Toler, judge of probate of Washington county, to Robert A. Lott.

4. Deed from R. A. Lott to John York, plaintiff's intestate.

To the introduction of which the defendants, Dunkin and Clark, objected, for the following reasons:

"First. Because the patent filed in this cause, and upon which the plaintiff relies for title from the Government to recover the land sued for, shows upon its face that the certificate located upon the land in controversy, and upon which the patent issued, was another and different certificate from the one described in the deed or transfer offered in evidence, to wit, a certificate issued to the heirs of one George W. Davis, on the first day of January, 1839, all of which shows that the land involved in this suit was patented upon another and different certificate than the one described in the deed or transfer offered in evidence, and therefore not admissible in evidence to establish title in plaintiff to the land described in the patent made a part of his petition.

"Second. Because the said Dan. J. Toler, neither in his individual capacity, nor as judge of probate, had any right or authority to execute said deed or transfer, and that the same did not transfer or pass any title to the said R. A. Lott,

and because said supposed deed or transfer was and is null and void, and irrelevant and inadmissible as evidence in this case for any purpose.

"Third. Because the original petition filed by the said William Pettus, in the Probate Court of Washington county, praying for letters of administration upon the estate of the said George W. Davis, shows upon its face affirmatively that the Probate Court of Washington county had no jurisdiction over the estate of the said George W. Davis, if, in truth, at the date thereof, the said Davis was dead; and because said original petition shows upon its face that said George W. Davis was not dead at the date of the granting of said letters of administration; and because the petition shows upon its face that said George W. Davis never was a resident or inhabitant of the said county of Washington.

"Fourth. The Probate Court of Washington county had no authority of law to order the sale of the certificate described in said deed or transfer; and for all the causes hereinbefore and hereinafter stated and set forth, said deed or transfer was and is null and void; and because the said William Pettus never was administrator of the estate of the said George W. Davis; because he never did execute any bond payable to the judge of probate, in accordance with the order of the court, and as the law then required; and because the certificate described in the deed or transfer never had been located upon the land described in plaintiff's petition, or any duplicate thereof; but the same is now in the district clerk's office of Washington county, as is shown by a certified copy, which is incorporated in the transcript from the Probate Court of Washington county, offered in evidence by the plaintiff.

"Fifth. Because the transcript from the County Court of Washington county, of the proceedings in the matter of the estate of G. W. Davis, deceased, discloses the fact that no counsel was appointed by the court to represent the absent heirs of said Davis, deceased, and that said absent heirs were at no time, nor in any way, represented in said proceeding,

nor did said absent heirs, or any one of them, at any time, or in any manner, assent to said order of sale, nor did such absent heirs, or any one for them, at any time, or in any manner, assent to, ratify, or confirm said sale; all of which was contrary to the express provisions of the law for such cases made and provided.

" Sixth. Because no character of indebtedness was ever established by any one against the estate of said G. W. Davis, deceased, or presented to the pretended administrator, Pettus, for his allowance, or presented to the probate judge of Washington county for approval, in the manner and form prescribed by law; because there is no evidence in said deed or transfer, or otherwise, that the said William Pettus ever sold the certificate described in said deed or transfer, and because there is no legal evidence in said deed or transfer that the said R. A. Lott ever paid anything for said certificate, and said alleged deed or transfer is, therefore, a *nudum pactum*, if anything; because the said Dan. J. Toler had no authority to execute said deed or transfer, or to set forth that said William Pettus had acknowledged the receipt of two hundred dollars from the said R. A. Lott for the purchase-money of said certificate, and because said deed or transfer shows upon its face that it is not signed, and was not executed by the said William Pettus, or by his authority; because it is not such an instrument, when recorded, as makes constructive notice of title to the property described in it; because the administrator applied for, or demanded, a sale of the property in less than thirty days after his alleged appointment as administrator of the estate, when the law required him to wait thirty days after he was appointed, before he could demand a sale of property,—therefore said sale was and is void, and said deed or transfer pursuant thereto is void, and not admissible in evidence in this case to establish any right in this suit.

" Because the said Dan. J. Toler had no authority to adjudicate a title from the said William Pettus to the said R. A.

Lott; because counsel for the absent heirs of G. W. Davis was not notified of the application for the sale, or of the sale having been made, and because said sale was not ratified or consented to by the counsel for the absent heirs, as the law in force at that time required.

"Defendants further object to the introduction of the patent, made an exhibit to plaintiff's petition, as evidence to support plaintiff's right to recover, because the patent purports to have been issued upon and by virtue of a certificate issued on the first day of January, 1839, while the record of the proceedings of the Probate Court of Washington county, offered in evidence by plaintiffs, show that the certificate petitioned to have been sold by the pretended administrator, William Pettus, was issued on the eleventh day of January, A. D. 1840, and that the said certificate has never been located and patented, but is now on file in the Probate Court of Washington county.

"Defendant objects to the introduction of the pretended deed from R. A. Lott to John York, because the same is incompetent as evidence to support the plaintiff's right to recover in this suit, for all the reasons assigned as grounds against the introduction of the deed from Dan. J. Toler to the said R. A. Lott, and for all the reasons assigned as grounds of objection to the introduction of the patent made an exhibit to plaintiff's petition."

The court below rejected said evidence, and adopted said reasons as the grounds of said rejection, and incorporated the same in plaintiff's bill of exception.

There is no affirmative evidence among the papers offered in evidence, that any inventory of the property of Davis was ever filed; that any debts had been proven up against his estate; or that any formal return of sale or confirmation of sale was ever made.

The *procès verbal*, under which Toler, the probate judge, undertook to convey the certificate belonging to the estate of Davis to Lott, was as follows:

"REPUBLIC OF TEXAS, ⎫
. *County of Washington.* ⎭

"Be it remembered, that on the third day of March, one thousand eight hundred and forty, William Pettus, administrator of the succession of George W. Davis, late of the county of Washington, deceased, offered for sale at the door of the court-house of the town of Washington, between the hours of 10 a. m. and 4 p. m., in pursuance of a decree of the Probate Court of the said county of Washington, rendered at the January Term of said court last passed, and in pursuance with advertisements made according to law, the said William Pettus, administrator, offered for sale, for cash, the following property, belonging to the estate of the said George W. Davis, deceased, to wit, 'the headright certificate of the said George W. Davis for one third of a league of land, being No. 491, issued by the Board of Land Commissioners for the county of Washington; which said certificate was bid off by Robert A. Lott, at the price of two hundred dollars, that being the highest and best bid made for the same, and exceeding two thirds of the price at which the same was appraised: Now, therefore, know all men by these presents, that I, Daniel J. Toler, chief justice and judge of probate in and for the county aforesaid, for and in consideration of the sum of two hundred dollars, to the said William Pettus, administrator as aforesaid, in hand paid, receipt whereof the said William Pettus acknowledges, do hereby adjudicate the said certificate to the said Robert A. Lott, his heirs and assigns. To all of which, I, the said judge, certify, by signing this instrument, at office in Washington, with Robert Merritt and Samuel Patterson, witnesses, and affixing my private seal, having no seal of office, this fifth day of March, A. D. one thousand eight hundred and forty.

"DAN. J. TOLER,    [SEAL.]
*Judge of Probate.*

"Witnesses:
ROBT. MERRITT,
SAML. PATTERSON."

It was proven up, on the 22d of July, 1858, before Samuel Lusk, the county clerk of Washington county, by A. Clampitt and G. W. Horton, who swore to the handwriting of Toler and the witness Merritt.

*Jones & Sayers*, for appellant, argued that, in the absence of evidence to the contrary, the presumption is, that the circumstances existed which were necessary to give the Probate Court jurisdiction to order the sale, citing Flanagan v. Pierce, 27 Tex., 79; that irregularity in the proceedings would not vitiate the grant of letters, or orders of sale, after jurisdiction had once attached, citing Giddings v. Steele, 28 Tex., 750; Poor v. Boyce, 12 Tex., 440; Howard v. Bennett, 13 Tex., 313.

The purchaser (Lott) was not required to go behind the order of sale and see that the administrator had been duly appointed and continued, and the proceedings regular. (Dancy v. Stricklinge, 15 Tex., 557; Burdett v. Silsbee, 15 Tex., 605; Poor v. Boyce, 12 Tex., 440; Alexander v. Maverick, 18 Tex., 179.)

*James B. Morris* and *F. W. Chandler*, for appellee.—Two prerequisites were actually necessary before the letters could be granted: (1.) That Davis should be dead. (2.) That he should have been a resident or inhabitant of Washington county at the time of his death. But the petition expressly says that he was not an inhabitant of or resident in Washington county at the time of death; and further expressly states that as far as Pettus knows, Davis was still alive, and had not been absent exceeding three years. Thus it is evident that there is no similarity between this case and the case of Giddings v. Steele.

The presumption of the common law is in favor of life for the period of seven years, while we have already seen that the civil law does not presume the death of a party within the period of one hundred years. Now, in the very able and

elaborate opinion of Judge Bell, in the case of Withers v. Patterson, 27 Tex., 491, he lays it down as a cardinal principle, that "presumptions are indulged in the absence of proof, and not against proof," and "that presumptions will not be indulged which are repelled by the record itself;" and that before any presumption can be indulged, the right of the court under the law to do what it has done, must first be affirmatively established. In the case of Giddings v. Steele, 27 Tex., 753, the court indulged presumption in the aid of proof, and not against it, and in aid of the record, and not against it. In the case at bar, appellant's counsel coolly ask the court to change the rule, and indulge presumption "against proof" and "against the record;" to hold as having been established as facts what Pettus never alleged as facts, and vitalize an order of court issued on a petition which shows on its face that the court had no right in law to grant the order. Will this court do it? We certainly think not; in fact, we know it will not, because such action would be in direct conflict with an unbroken chain of decisions of this court on this point. (Peters v. Caton, 6 Tex., 554; Finch v. Edmonson, 9 Tex., 504; Miller v. Miller, 10 Tex., 332; Hearn v. Camp, 18 Tex., 545; Withers v. Patterson, 27 Tex., 491; Giddings v. Steele, 28 Tex., 750.) As early as in the case of Hall v. Jackson, 3 Tex., 305, this court decided that facts not alleged in the pleading, though proven, cannot form the basis of a decree or judgment, and reference is made to many cases sustaining the proposition. And the rule then laid down has never yet been overruled by this court, so far as we can discover.

Nowhere, in the transcript from Washington county, is the certificate described as having been issued on the 1st of January, 1839. No presumption of clerical error can be indulged in, in the absence of pleading alleging it; and the variance is too great then to be cured by presumption in the absence of proof, because a change of four figures is necessary to make January 11, 1840, out of January 1, 1839, and, be-

sides, the doctrines of *idem sonans* cannot apply, because there is no similarity of sound between the pronunciation of them.

In the case of Brown *v.* Martin, 19 Tex., 345, Judge Roberts lays down very succinctly the principle we here invoke, as follows: " The rule in action upon contracts is, that if any part of the contract proved should vary materially from that which is stated in the pleadings, the variance will be fatal. (Mason *v.* Kleberg, 4 Tex., 85; Hunt *v.* Wright, 13 Tex., 549; 1 Starkie's Ev., 446, 447.) Where only the substance is proposed to be given, it is held that, in general, a description of an instrument, contrary to its legal effect, will be fatal. (1 Starkie's Ev., 483; Chitty on Bills, 464.) "

In the case of Pilie *v.* Mollere, 7 Martin, 341, a difference of a few cents was held to be fatal; and in the case above cited from, Judge Roberts indorsed the decision. Time when, has always been held as of the essence of all written instruments. In the case at bar, plaintiff sued and alleged that he was the owner of and entitled to the possession of 1476 acres of land, which was patented to the heirs of George W. Davis, on a certificate for 1476 acres of land, issued in Washington county, on the first day of January, 1839; the name of the grantee of the certificate not being mentioned. On the trial, if he proves title to anything, he proves title to a land certificate procured on the 11th January, 1840, by the administrator of George W. Davis, and exhibits proof himself that said certificate has never been patented. Did not the court, sitting both as judge and jury, properly rule that he had failed to make his case? Tested by the facts and rules of law above copied, if the correctness of the ruling of the court on this point is not self-evident, we confess that we cannot demonstrate it.

GOULD, ASSOCIATE JUSTICE.—It is contended that the transcript from the Probate Court of Washington county shows on its face that the court had no jurisdiction over the estate of George W. Davis. The first ground on which this is claimed

involves the proposition that, under the laws in force in January, 1840, the Probate Court of Washington county had no power to grant letters of administration on the estates of persons who were not "inhabitants of or resident in said county at the time of their decease." The 24th section of the act of December 20, 1836, "organizing the inferior courts and defining the power and jurisdiction of the same, (Hart. Dig., art. 252,) is as follows: "The chief justices of the County Courts shall be judges of probate for their respective counties; shall take the probate of wills; grant letters of administration on the estates of persons deceased, who were inhabitants of or resident in said county at the time of their decease; shall appoint guardians to minors, idiots, and lunatics; and, in conjunction with the associate justices, shall examine and settle the accounts of executors, administrators, and guardians; and said chief justices shall have full jurisdiction of all testamentary and other matters appertaining to a Probate Court within their respective counties." Conceding that, as an original question of the construction of this act, standing alone, it might well be questioned whether it did not limit the jurisdiction of the court as is claimed, we remark that, prior to the grant of administration on the estate of Davis, there had been other legislation inconsistent with such a construction.

In 1838, various restrictions on the appointment and action of administrators of estates of deceased soldiers or officers, "other than a citizen soldier, who was a citizen of Texas, in the full exercise of his rights as such at the time of his death," were enacted, impliedly recognizing the validity of administrations on the estates of soldiers, and of others not residents or citizens of the State. (Hart. Dig., arts. 984–990.) See also Hart. Dig., art. 269, which provides for the transfer of administrations theretofore pending before the primary courts to the Probate Courts where the deceased had his domicile at the time of his death, "or, if he had no fixed domicile, then to the clerk of the Probate Court where the deceased died or

where the majority of the property of the deceased is situated." Taking these enactments into view, following what is believed to have been the contemporary and practical construction of the powers of the Probate Court, we hold, that that court had jurisdiction to grant letters on the estates of decedents who were not residents of the county at the time of their decease.

It is further urged that the petition for letters of administration shows that Davis was not dead, and that therefore the administration was void. The petition contained an averment that petitioner verily believed that Davis had departed this life, and was unquestionably sufficient to admit of proof of his death. Although it may appear that the petitioner, when his petition was filed, had no positive information of the death of Davis, it must be presumed that the court did not act without being satisfied of the fact. The validity of the administration certainly depends on the fact of death, but it does not depend on the positive knowledge of the petitioner of that fact. It is true that the petition states a case in which the court might have declined to act, but it must be presumed that inquiry was made, and that it was found that the belief of the petitioner was well grounded. It would be most unsafe to make the validity of the administration depend on the sufficiency of the petition, conducted, as administrations often were in this State, without legal advice; and we are of opinion that the transcript of the proceedings of the Probate Court of Washington county does not disclose any want of jurisdiction in that court.

Numerous objections were made to the validity of the order of sale of the certificate, some of which may be disposed of by the remark, that the certificate was not real estate, but was subject to be sold, as other personal property. (Cox *v.* Bray, 28 Tex., 260.) The validity of the order of sale did not depend on the regularity of the bond, or the appearance, in the record of compliance with all of the regulations prescribed in the Civil Code of Louisiana. The courts of Louisi-

ana, like the courts of Texas, hold that a *bona fide* purchaser is protected by the decree of a court which has jurisdiction. They hold also that the decree of sale would not be an absolute nullity by reason of the omission to appoint an attorney to represent absent heirs. (Gibson v. Foster, 2 La. Ann., 503; McCullough v. Minor, Id., 468; Succession of Wadsworth, Id., 966; Ball v. Ball, 15 La., 182; Rhodes v. Union Bank, 7 Rob., 63.)

The ordinance of January 22, 1839, (Hart. Dig., art. 983,) decreed "that all proceedings relative to successions, matters of probate, *et cetera,* shall be regulated and governed agreeably to the principles and laws in similar cases in the State of Louisiana: *Provided,* That no judge shall act as administrator." The meaning of this proviso is evidently the same as if the proviso read, "no judge shall receive letters of administration." See Hart. Dig., art. 993, for a similar prohibition as to clerks. We see nothing in this proviso, nor in the act defining the time of administration and sheriff's sale, conflicting with articles 2600 and 2601 of the Civil Code of the State of Louisiana, as it was in force in 1839 and 1840, as follows: "Art. 2600. The judicial sale of succession property is made by the judge or clerk of the court to which this jurisdiction is specially confided. Art. 2601. The adjudication made and recorded by the judge or clerk of a court, is a complete title to the purchaser, and need not be followed by an act passed before a notary."

The conveyance, adjudication, or *proces verbal,* executed by the judge of probate to the purchaser, seems to be an effort to follow these articles of the Louisiana code. At the time of the sale, the act regulating the duties of Probate Courts, &c., (Hart. Dig., art. 995, *et seq.,*) had not yet gone into operation, as it had in the case of Hall v. Hall, 11 Tex., 550, in which a similar case was held invalid. As we understand the Louisiana civil code then in force, and the decisions of the Louisiana courts, such an instrument was the appropriate evidence of an administration sale, and, with the lights before

us, we cannot hold that it was invalid. (Reynolds *v.* Rowley, 2 La. Ann., 891; Faulk *v.* Pinnell, 6 Rob., 26; Babin *v.*Winchester, 7 La., 460; Moore *v.* Louaillier, 2 La., 571.)

There seems to be a discrepancy in the date of the certificate as given in the patent, and the date of the certificate issued to the administrator of Davis. This discrepancy constituted no·valid objection to the admission of the patent in evidence. As the patent had been made an exhibit to the petition, there could be no variance. It was a question of fact, not affecting the admissibility of the patent, whether, notwithstanding the discrepancy in the date of the certificate, the patent did not refer to the same certificate which was issued to the administrator of Davis.

Because the court erred in excluding the various instruments of evidence offered by plaintiff, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Associate Justice MOORE did not sit in this case.]