No. 9426.

B. J. SAGE vs. BOARD OF LIQUIDATION.

Act 16, of the General Assembly of 1864, directed the issue of $10,000,000 of State bonds, and required the Governor to sell or exchange the bonds for treasury notes, Confederate or State.

A number of these bonds were given in exchange for sugar, to meet the wants and exigencies of the State government. *Held*, that such disposition of them violated the mandatory requirement of the law, and the holder of them acquired thereby no right or title to them as would enable him to have them funded and exchanged for consolidated bonds under the funding act of 1874.

The presumption in favor of official acts, that they are rightly done, is not a presumption *juris et de jure*, but one open to contrary proof.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus*, J.

*B. J. Sage* and *W. F. & D. C. Mellen* for Plaintiff and Appellant.

*M. J. Cunningham*, Attorney General, for Defendant and Appellee.

The opinion of the Court was delivered by

TODD, J. This is a suit for the funding and exchange of five bonds of $1000 each, dated August 1, 1864, payable in twenty-five years from their date and bearing 6 per cent interest, payable semi-annually.

These bonds were issued under the authority of Act 16 of 1864, entitled "An act to authorize the sale of bonds for the relief of the treasury, and final liquidation of the principal and interest thereof."

Among its provisions are the following:

"Section 1. That the Governor be, and he is hereby authorized to cause to be engraved or printed bonds, to an amount of ten millions of dollars.

"Sec. 4. That said bonds shall be SOLD by the Governor for the benefit of the State, or shall be exchanged for any of the treasury notes, Confederate or State; but shall not be *sold* or exchanged for less than *par*, nor in greater amounts than the *exigencies of the treasury* may require.

"Sec. 5. That so fast as the Governor shall sell or exchange the bonds, and receive money, Confederate or State treasury notes therefor, he shall cause to be cancelled an equal amount of State treasury notes then in the treasury, equal to the amount realized for the sale or exchange of the said bonds, and shall cause the proper entries to be made in the Treasurer's and Auditor's books."

These bonds were first delivered to Gen. Montfort Wells, the husband and agent of Mrs. J. D. Wells, a short time after their date, and were subsequently assigned to the plaintiff herein.

The plaintiff alleges, substantially, that the bonds are legal and valid obligations of the State; that they were issued in strict conformity to law; that the original holder acquired them for a valid consideration; that they were not issued in violation of the State or Federal Constitu-

tion and are in proper form; and in short that they come within all the conditions entitling them to be funded and exchanged for consolidated bonds, as provided by Act 3 of 1874.

The answer of the defendant board is a general denial, and also special denials, which, together, fully put at issue the validity of the bonds and the right of the holder to have them funded as representing a valid debt of the State.

There are several interesting questions discussed by the able counsel of the parties litigant, such for instance as relates to the power of the State, at the time a member of a confederacy at war with the United States, to issue the bonds; whether the bonds were issued for purposes hostile to the government of the United States, or to aid in the prosecution of the war against its authority; and whether the act under which they were issued was violative of the State and Federal Constitutions. These and like grave questions we find it unnecessary to determine.

The second section of the act, as above quoted, imperatively required that the bonds in question should be sold by the Governor for the benefit of the State, or exchanged for treasury notes—State or Confederate.

It is plain that the Governor, as the chief executive officer of the State, had no power whatever to deal with these bonds or to dispose of them, except in the precise manner and for the distinct purpose pointed out by the law; and that any act of his in contravention of the law in this regard would be void and could not confer on any person or any holder of the bonds the right to recover on them or enforce their liquidation or payment.

This proposition we do not understand to be controverted by the plaintiff, but virtually admitted as correct, by his contention that the bonds were sold by the Governor in compliance with the terms of the act.

Were they thus sold or exchanged for the currency named as required by the act?

It is certain that a large quantity of sugar was procured for the use of the State government by means of these bonds, to be applied to the relief of the people of the State. How was it procured? The plaintiff in his petition alleges, substantially, that it was procured by an exchange of the bonds therefor. He produces three witnesses—Gen. Montfort Wells, to whom the bonds were delivered and from whom the sugar was obtained; E. W. Halsey, the private secretary of Gov. Allen, and James C. Wise, the then State quartermaster—who were intimately acquainted with the entire business connected with the

transaction. They all concur in the fact that the sugar was obtained in exchange for the bonds.

We quote from the testimony of Gen. Wells on this point:

"In the year 1864, agents representing Henry W. Allen, Governor of the State of Louisiana, were desirous of purchasing sugar and cotton; they offered Confederate money in payment therefor; as husband and agent of Mrs. Jeannette Wells, I refused to take Confederate money. * * * * When I refused to take Confederate money for sugar, he proposed to give me State bonds that were authorized by the act of the Legislature, No. 16 of 1864. . * * * * I agreed to make the exchange of sugar for these bonds; the exchange was made. * * * * The sugar * * was delivered to Isaac Levy, at Alexandria; he then delivered to me the bonds * * * * I took the bonds in my name; the property exchanged, being sugar, was raised on the plantation belonging to my wife."

Against his own judicial admissions that the bonds were thus exchanged, and the positive testimony of his own witnesses to the same effect, the plaintiff invokes the legal presumption that the officer charged by law with the sale of these bonds discharged his duty, and therefore the bonds were sold and not exchanged. He further cites for the same purpose and as confirmatory of his presumption, an entry in the "Receipt Ledger" of the State Auditor's office, of 1860 to 1864, as follows:

"February 2, 1865.

"Order No. 16, to Montfort Wells, for purchase of 184 six per cent bonds of $1000 each, issued under Act No. 16 of 1864."

Also another entry in same book, showing the payment at the same time of the semi-annual interest on the bonds.

Waiving the question whether the plaintiff could thus break down and destroy the effect of his own judicial admissions and the testimony of his own witnesses confirming them, even under an allegation of error, it is enough to say that he has not succeeded in doing so.

The presumption in favor of the acts of an officer done within the scope of his authority is not a conclusive presumption; it prevails only till the contrary be shown. This is elementary, and authorities need not be cited in support of it.

Here the contrary proof is overwhelming, being the testimony of the party to the alleged sale of the bonds, and of one or more who were charged with and acted in the matter of their negotiations. Nor can the entries referred to be regarded as conclusive in the face of this proof. As to the first entry, the officer making it may have used the

Sage vs. Board of Liquidation.

word "purchase" in ignorance or disregard of the technical difference between a sale and an exchange. One unacquainted with the legal distinction between these two kinds of contracts may have thought the sugar acquired by *exchange* of the bonds was *purchased* by the bonds.

The inference from the entry that there was a sale, rests alone on the word "purchase" therein, and really amounts to nothing against the testimony of the alleged purchaser, showing conclusively that he did not purchase, but exchanged the property for the bonds, fully supported as is his testimony by that of other witnesses thoroughly cognizant of the fact.

Besides, we cannot possibly believe from the evidence that Wells, to whom the bonds were delivered, first paid Confederate money or State notes for the bonds and then returned the money or notes and delivered the sugar in lieu thereof.

Nor does the payment of interest on the bonds strengthen the plaintiff's right or title thereto. If they were acquired by the first holder in contravention of law, a subsequent recognition of the holder's right thereto by any of the executive officers of the State Government, to be inferred from a payment on the bonds, could not cure the radical defect of title, nor bind the State or its officers in any department of its government.

For these reasons, the judgment of the lower court is affirmed with costs.

---

## ON APPLICATION FOR REHEARING.

BERMUDEZ, C. J.    The judgment rendered, both below and here, simply declares that bonds issued under Act 16 of 1864, and which were not sold or exchanged for Confederate or State treasury notes, but were given for State necessities, are not fundable under Act 3 of 1874.

The plaintiff in his application for a rehearing, expresses an apprehension that it may be claimed, that this judgment adjudicates adversely to any right which he may have to recover payment for the sugar sold to or used by the State.

The judgment passes on no such question which was not and could not be presented.

We find no error in that judgment.

Rehearing refused.