## SAGE *v.* LOUISIANA BOARD OF LIQUIDATION.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 21. Argued and submitted March 4, 1892. — Decided April 18, 1892.

A judgment of a state court upon the question whether bonds of the State were sold by the governor of the State within the authority vested in him by the statute of the State under which they were issued, involves no Federal question.

THE case is stated in the opinion.

*Mr. B. J. Sage,* in person, and *Mr. Charles W. Hornor,* for plaintiff in error.

*Mr. Walter H. Rogers,* Attorney General of the State of Louisiana, submitted on his brief.

MR. JUSTICE FIELD delivered the opinion of the court.

This was a suit against the board of liquidation of the State of Louisiana to compel it to fund certain bonds of the State held by the plaintiff, of August 1, 1864, and to exchange them for its consolidated bonds as provided in the act of the legislature known as No. 3, of 1874, at the rate of sixty per cent of their valuation. The petition of the plaintiff was filed in April, 1881, in the Civil District Court of the parish of New

Orleans, and set forth that he held, as assignee of the agent of
Mrs. J. D. Wells, and others, five bonds of the State, of one
thousand dollars each, with coupons attached dated August 1,
1864, payable twenty-five years after date, with six per cent
interest, payable semi-annually; that these bonds were issued
by the State at that date under the law of February 8, 1864,
and other laws, and were properly endorsed and assigned to
the plaintiff, or the holders thereof; that they were legal and
valid obligations of the State, were issued in strict conformity
to law, and not in violation of the constitution of the State or
of the United States, and were issued and transferred for a
valuable consideration, and were entitled to be funded as such
valid obligations; that the plaintiff desired and was entitled
to have them funded under act No. 3, of 1874, known as the
Funding Act, and to have them exchanged for consolidated
bonds of the State, as provided in that act, at the rate of
sixty per cent of their valuation; and that he had presented
the bonds for such funding and exchange to the board of liqui-
dation, making an amicable demand of the board therefor,
but that it had refused to fund them and make the exchange.

The petition further set forth that the bonds were issued
by the regular state government of Louisiana in due course of
administration and performance of governmental business, in
paying for property needed to facilitate and aid civil opera-
tions, and that the transaction had no connection with con-
temporaneous military affairs and was in nowise touched or
tainted with any confederate cause, consideration or motive;
and that they were issued in proper form and by proper offi-
cers, according to law, sealed with the seal and secured by the
faith of the State. The plaintiff therefore prayed that the
board of liquidation might be cited, and that it be decreed
that the bonds were legal and constitutional obligations of the
State of Louisiana; that they were issued in conformity with
law and not in violation of state or Federal constitution, and
were given to the original holders for a valuable consideration,
and were entitled to be funded and exchanged in conformity
with the act No. 3, of 1874; and also for all orders, judgments
and decrees that justice might require in the premises.

To the petition the board of liquidation appeared and answered by a general denial of its allegations. It also made special denial that the bonds were valid obligations of the State, and alleged that the parties who signed and issued them were not the authorized agents of the State; that the bonds were not issued for a valuable consideration; and that they were issued in violation of the Constitution of the United States.

The statute No. 3, of 1874, referred to in the petition, enacted that the board of liquidation, which was created by it, should exchange the consolidated bonds of the State, for which the act also made provision, for all valid outstanding bonds of the State, at the rate of sixty dollars for one hundred dollars; and a subsequent amendatory act, known as No. 11, of 1875, required a favorable decision of the Supreme Court of the State upon all bonds of questionable and doubtful obligation, as to their legality and validity, as a condition of their fundability, and also required the parties seeking to have them funded to affirm that they were issued in strict conformity to the law and for a valuable consideration, and that they were constitutional. Upon the issues formed, the testimony of several witnesses was taken, explaining the circumstances under which the bonds were disposed of, from which it appeared, among other things, that they were exchanged for sugar procured by the State. The party to whom the bonds were delivered and from whom the sugar was obtained testified to that effect, and the private secretary of the governor at that time and the state quartermaster, who were fully acquainted with the transaction, corroborated his testimony.

In February, 1888, the case was heard by the District Court of the parish, which rejected the demand of the plaintiff and ordered judgment for the defendant, which was accordingly entered. The case was taken to the Supreme Court of the State, and there the judgment was affirmed. In giving its decision that court said that the general and special denials of the answer fully put in issue the validity of the bonds and the right of the holder to have them funded, as representing a valid debt of the State; that the second section of the act under

which the bonds were issued imperatively required that they should be sold by the governor for the benefit of the State, or exchanged for treasury notes, state or confederate; that it was plain that the governor, as the chief executive officer of the State, had no power whatever to deal with those bonds or to dispose of them, except in the precise manner and for the distinct purpose pointed out by the law; and that any act of his in contravention of its provisions in that regard would be void, and could not confer on any person or holder of the bonds a right to recover them or to enforce their liquidation or payment. This proposition, said the court, it did not understand to be controverted by the plaintiff, but to be virtually admitted as correct by his contention that the bonds were sold by the governor in compliance with the terms of the act. It then holds that the exchange of the bonds for sugar was not a compliance with the act which authorized only a sale of the bonds for treasury notes, state or confederate. It would also appear that the plaintiff invoked the legal presumption that the officer charged by the law with the sale of the bonds discharged his duty, and that therefore the bonds were sold and not exchanged, and, confirmatory of this presumption, he cited an entry in the receipt ledger of the state auditor's office, in which the transaction is alluded to as a purchase. But the court said as against the admission of the plaintiff himself that the bonds were exchanged, and the positive testimony of witnesses to the same effect, that presumption could not prevail, which was not a conclusive presumption, but one that prevailed only till the contrary appeared. The Supreme Court of the State therefore affirmed the judgment of the lower court; and to review that judgment the case is brought here on writ of error. 37 La. Ann. 412.

The case does not present any Federal question for our consideration. The only question before the court below, and which was decided negatively, was whether the bonds were sold by the governor of the State, within the authority vested in him by the law under which they were issued, by being exchanged for sugar, and were therefore valid obligations of the State which could be funded under its statute. There is,

in the consideration and determination of this question, no resort to any Federal law; it is purely a question of the construction of a state statute and of the power which was conferred by it upon her agents—nothing more nor less. The governor, acting in their disposal, was limited by the language of the statute. He could sell the bonds or exchange them for treasury notes, state or confederate; he could not dispose of them in any other way.

There being no Federal question involved,

*The writ of error must be dismissed.*