### ALLING ET AL *vs.* BEAMIS.

#### APPEAL FROM THE COMMERCIAL COURT OF NEW-ORLEANS.

The purchaser of property previously mortgaged takes it, subject to the balance due on such mortgage, whatever it may be, and retains this sum in his hands over and above the price he bids, to be paid to the rightful owner.

The inferior court has no longer any power over an appeal, after it is once granted. The Supreme Court alone has jurisdiction over this case, when an appeal is once taken.

This is an action against the defendant as possessor of a lot of ground, purchased by him at public sale, and subject to a mortgage to secure the ultimate payment of two notes, given by H. Florance & Co., as part of the consideration of said lot, to French and Meux, for four hundred and eighty-one dollars each. The lot passed through several sales, into different hands, and among others the plaintiffs, and was finally sold under an order of seizure and sale at the suit of Beamis *vs.* Gloyd, one of the intermediate purchasers. Beamis purchased it in for less than his claim on Gloyd. While the plaintiffs held it, they took up and paid these two notes to French and Meux, for which the property was originally hypothecated, and became subrogated to their rights against it. They now demand judgment of Beamis for the amount of the notes, or that he surrender up said lot.

The defendant pleaded a general denial, and averred that he owns and possesses said lot free of any incumbrance whatever; having purchased it at sheriff's sale; and further, that the matters in this case have been adjudicated by the District Court, which he pleads as *res judicata.*

The facts of the case are more fully detailed in the opinion of the court which follows :

The judge presiding was of opinion the plaintiffs had not shown themselves entitled to recover, as being subrogated to the rights and mortgage of French and Meux, gave judgment for the defendant. The plaintiffs appealed.

49   VOL. XV.

*Hoffman*, for the plaintiff. The sale and purchase of the property by Beamis, did not release the mortgage of French and Meux, which was duly recorded. He took the property subject to this mortgage, which existed as security for the payment of all the notes given for the price, by Florance & Co. The plaintiffs have as much right to go on the mortgage for the two notes they took up, as the defendant had to sell the mortgaged property for the three notes he had to pay, as endorser for Gloyd; for the latter assumed the two notes in question, as part of the price of his purchase. In fact, the property was sold, subject to this entire mortgage, and in pursuance of the *Code of Practice, article* 679; 6 *Martin, N. S.*, 615.

2. If French and Meux had come upon the property, for the amount of these two, there would have been no semblance of ground on which to resist their claim; and the plaintiffs, by taking up the notes, were subrogated to the rights of the mortgage creditors; the defendant purchased in the property subject to this mortgage, and must be considered as retaining the amount of these two notes in his hands, to be paid to the holder of them.

*Maybin*, for the defendant, insisted that the plaintiffs were not to be considered in the light of purchasers, for in the auction sale from Bergen to them, there was no act of sale ever passed. They paid the notes in bank, when they were not purchasers in reality, of this mortgaged property, and had no legal interest in paying these two notes; but their payment extinguished the debt and also the mortgage, its accessory; and that consequently, Beamis purchased the property free of mortgage.

2. The first objection to the plaintiff's recovery, is that no legal title was in Gloyd, till February 25, 1837; no *procès verbal* of the auctioneer, of a sale from Florance & Co., to Gloyd, is shown. The auction sales from Gloyd to Bergen, and from Bergen to the plaintiffs, were, therefore, made prior to any title in Gloyd; he, therefore, could give none.

3. But, supposing that Gloyd had title on January 25, and

February, 17, 1837, no act of sale was passed from him to Bergen, and none from Bergen to plaintiffs; this they admit in their petition. There was no title in them, and the plaintiffs were not purchasers. *Louisiana Code*, 2255, 2415, 2588.

4. The article 2586, makes the adjudication the completion of the sale. This means only between the parties, as is provided for in the article 2431, and is to be taken in connection with the 2255, 2415, and 2588th articles above quoted, being on the same subject. The act of sale is still indispensable; and there is no title, as regards third persons, without it.

5. Even if an act of sale was passed from Gloyd to Bergen, or from Bergen to the plaintiffs, it was not registered in the office of the recorder of conveyances. *Act of March* 20, 1827, *section* 5; and, therefore, it would not be good against the defendant. The plaintiffs, therefore, were not purchasers; and the 2157th article of the code, does not apply.

6. The plaintiffs have not been subrogated to the rights of Florance & Co., the vendors of Gloyd, because they were not bound *with* or *for* Florance & Co. *Code, article* 2157.

The law of implied subrogation relates only to obligations to which the payor, who becomes subrogated, was a party *with,* or *for* others, as endorsers, surety, or obligor *in solido*; that is, he must be a party to the obligation. For this reason an endorser of a note given for mortgaged property, when he pays it, becomes *ipso facto* subrogated to the mortgage of the mortgage creditor. Had the plaintiffs been the endorsers on the notes of Florance & Co., by their payment of them they would have become subrogated to the mortgage of Meux and French.

Two conditions are requisite: 1. That the debt be *common to him who pays;* 2. That the person paying have an interest in paying. 7 *Toullier, section* 148, *page* 195.

7. But the plaintiffs say that they assumed the payment of these two notes. Where is the proof? No act of sale was passed from Bergen to them, therefore, they did not assume the payment in that, and an act of sale is the *only* evidence of the obligations of a purchaser. There is no evidence of

such an assumption.    In the memorandum, page 8, the terms are not mentioned, and if they were, they were not signed by the plaintiffs.  In the other memorandum, page 12, nothing is said by the auctioneer that the lot was sold to the plaintiffs on those terms, and even if he had, as the plaintiffs did not sign the memorandum, they gave no consent or assumption.

This is only one way to bind a purchaser of immoveable property, and to show his assumption or obligation.  *Code, article* 2255, 2415.

To conclude :  The plaintiffs were neither purchasers, nor bound *with* or *for* Florance & Co., and are, therefore, not subrogated to any mortgage, which was extinguished.  Their recourse must be against Gloyd, for whom, and for whose benefit they paid the money.

*Simon, J.*, delivered the opinion of the court.

This is an action of mortgage, instituted by the plaintiffs against the third possessor of a certain town lot.   The record shows that on the 10th of June, 1836, French and Meux sold the lot to Florance & Co., who gave four notes of four hundred and eighty-one dollars and twenty-five cents each, in part payment of the price ; on the 25th of January, 1837, Florance & Co. sold the same lot at auction to one Gloyd, who on the same day sold the same by auction to Bergen ; and Bergen, on the 17th of February, sold again the same lot by auction to plaintiffs.   No act of sale from Florance & Co. to Gloyd was passed until the 25th of February, and in the said act, Gloyd assumed the payment of two of the notes of Florance & Co. to French and Meux.  It appears to have been understood between the successive vendors and purchasers, that the two outstanding notes due by Florance & Co. to French and Meux were to be assumed and paid by the last purchaser, but no act of sale was ever passed from Gloyd to Bergen, nor from Bergen to the plaintiffs.   On the 5th of June, 1837, plaintiffs, in compliance with the conditions of the adjudication, paid the two notes in bank.   In December, 1838, the defendant, who as endorser of the notes of Gloyd to Florance & Co., had been compelled to pay the last note

due on the 25th of July, 1838, to the amount of one thousand
three hundred and eighty-four dollars and seventy-two cents,
issued an order of seizure and sale against the lot, and pur-
chased it at sheriff's sale to an amount not sufficient to secure
himself; the certificate of mortgage found in the record shows
that the lot must have been sold by the sheriff, subject to the
payment of the two outstanding notes secured by mortgage;
and this we are to presume, as the record does not contain
any of the proceedings had on the order of seizure and sale
by the sheriff, nor does it contain the sale from the sheriff to
the defendant.

In this state of the case, it is contended by the plaintiffs
that they are entitled to be reimbursed the amount by them
paid to French and Meux; in discharge of the two notes
secured by mortgage; having become subrogated to the
rights of the vendors, and they pray that the lot in question
be surrendered, in order that it may be sold to satisfy their
demand as a mortgage claim. On the other hand, the
defendant denies the plaintiffs' right of mortgage, and avers
that having purchased the lot at sheriff's sale, he is the
owner of it, without any mortgage or incumbrance of any
kind.

We are not to examine into the title which the plaintiffs
may have acquired to the lot in question, since they do not
sue for the property; but it may be necessary to look into it
so far as to ascertain the reason which induced them to take
up the two notes due to French and Meux; from the evidence,
it appears that they did so, in compliance with the terms of
the sale, and in the belief that they were the rightful owners
of the lot; and if so, they had a right to pay the mortgage
creditors. Under the 2586th article of the Louisiana Code,
the adjudication is the completion of the sale, and the pur-
chaser becomes the owner of the object adjudged; from this
moment, the plaintiffs had a right to claim the property as
purchasers thereof; and as such, they had an interest in
employing the price of their purchase in paying the creditors
in favor of whom a prior mortgage existed on the lot. *Louis-
iana Code, article* 2157, *section* 2. The title of the plaintiffs

to the property in question, resulting from the adjudication, may have been destroyed by subsequent circumstances; but it is nevertheless true, that at the time of the payment, nothing prevented them from considering themselves the owners of it, and from complying with the terms of what they had every reason to believe to be their contract. We think, therefore, that the plaintiffs, by paying the two notes due to French and Meux, have acquired a legal subrogation to the rights of the creditors, who had a mortgage prior to that under which the defendant purchased the lot at sheriff's sale.

But it is contended, that at the time of the sale to the defendant, there was no mortgage on the property, since the amount of the notes had previously been paid to the mortgage creditors. Whether this position be correct or not, the certificate of the recorder of mortgages shows that the mortgage given to secure the payment of the notes had never been released; and if, as we have already said, we are bound to presume, until the contrary be shown, that the sheriff sold the property according to law; Code of Practice, article 679 and 683, it results that the lot was sold, subject to the mortgage apparently existing, that the amount of the notes was a part of the price, and that the defendant retained, and has in his hands, the very money required to satisfy the debt for which he is now sued. This circumstance alone would be sufficient to entitle the plaintiffs to recover; the defendant has certainly no right to keep the amount proceeding from the price of his adjudication, it must be paid over to somebody; it cannot be paid to French and Meux, who have received it from the plaintiffs; it does not belong to Florance & Co., who were the drawers of the notes; Gloyd cannot set up any claim to it, since it was a debt which he had originally assumed to pay as part of the price of his purchase, and we see no reason why the defendant should be allowed to keep both the price and the property, and thereby to enrich himself at the prejudice of another. We think that the judge *a quo* erred in giving judgment in favor of the defendant; and ours must be for the plaintiffs for the amount of the notes, with legal interest from judicial demand.

*The purchaser of property previously mortgaged takes it subject to the balance due on such mortage, whatever it may be, and retains this sum in his hands, over and above the price he bids, to be paid to the rightful owner.*

We have not thought necessary to notice the question of *res judicata,* raised by the defendant; it is untenable; but the proceedings which gave rise to it are so novel in their character, and so irregular in practice, that we cannot forbear expressing our astonishment that the judge, before whom they were had, could for a moment entertain the idea that, after having granted an appeal, he could legally, and on motion of the appellee, take cognizance of its propriety and of its merits; and render a judgment, (here the basis of the plea of *res judicata,*) rescinding his former order, and dismissing the appeal. It is well settled that this court alone has jurisdiction of a case in which an appeal has been granted, and that no further proceedings can be had therein in the lower court, until the case has been disposed of by this tribunal, and its mandate returned below for execution.

It, is, therefore ordered, adjudged, and decreed, that the judgment of the Commercial Court be annulled, avoided and reversed; and this court proceeding to give such judgment as ought to have been rendered in the lower court, it is ordered, adjudged and decreed, that the plaintiffs do recover of the defendant, the sum of nine hundred and sixty-two dollars and fifty cents, with legal interest per annum thereon, from the 6th of May, 1839, until paid, with costs in both courts; and that the property described in the petition, be seized and sold to satisfy this judgment.