Statement of the Case.
MONROE, C. J.
Defendant prosecutes this appeal from a judgment annulling a sheriff’s sale (made to him under a judgment obtained by him against plaintiff and others) and decreeing plaintiff to be the owner of an undivided half interest in the property sold. The facts out of which the litigation has arisen, in so far as they are disclosed by this transcript, and by the transcript in Gray v. Spring, 129 La. 345, 56 South. 305, Ann. Cas. 1913B, 372, which has been offered in evidence, are as follows:
Prior to May 14, 1901, Gray, defendant herein, and Aladin Vincent, owned in indivisión 4,688.05 acres of land in Calcasieu parish. Gray upon the day mentioned sold his interest to Vincent and two associates, the Messrs. Perry, for $234,402.50, of which $25,-000 was paid in cash and the balance in notes secured by mortgage, etc. Vincent and the Perrys then organized the plaintiff company, with Vincent as president, and conveyed to it the entire bpdy of land thus mentioned, subject, as to the half interest acquired from Gray, to the mortgage granted in his favor to secure pajunent of the price. In April, 1903, Gray and the Vinton Company (as. we shall call plaintiff) entered into a written contract whereby Gray acknowledged that the balance due on the notes held by him had been reduced to $200,000, extended the terms of payment of the same, and reduced the interest, and the company, for his further-security, granted him a mortgage for said balance upon the entire property, it being expressly stipulated that his rights, under-the mortgage upon the half interest which he had sold to Vincent, should remain unimpaired, and that, in the event of the nonpayment of the notes as extended, he, or any other holder, should be authorized to cause the entire property to be sold, for their satisfaction, “under executory or other process.”-
In 1904, Gray filed a petition in the district court, setting forth the facts as above stated, alleging default of payment under the contract of April, 1903, and praying tliat Vincent, the Perrys, and the Vinton Company be cited, and that he have judgment against Vincent and the Perrys in solido for $200,000, with interest, and with recognition of his. mortgage and vendor’s lien on the half interest in the land in question which he had sold to them, and with recognition of his mortgage, as granted by the Vinton Company,. *1054 upon the entire tract; and on August 8, 1904, he obtained judgment, in confirmation of default, against Vincent and the Perrys in solido as prayed for, and further decreeing that his mortgage upon the entire tract, as fully described, be recognized and made ex-ecutory in the sum of $200,000, with interest, etc. Thereafter, in satisfaction of the judgment so rendered, the sheriff seized the entire property to which it refers (and, it is said, other property, belonging to Vincent individually), and, after due advertisement, on January 7, 1905, adjudicated it, though not all in one lot, to Gray for an aggregate sum of $74,050. The sheriff’s deed, dated January 9, 1905, bears the title and number of thq suit in which the judgment was rendered and contains the following, among other, recitals, to wit:
“Know all men * * * that, whereas, by virtue of a certain writ of fieri facias, issued upon a judgment rendered by the Fifteenth judicial district court, * * * I, * * * sheriff, * * * - did * * * seize, as the property of the said Aladin Vincent et al., the following described property: [Here follows a description of the property.] That, after having, on the 4th day of November, 1904, given to the said Aladin Vincent notice of seizure of said property, in conformity with the requirements of law, * * * and after the expiration of the legal delay * * * I gave public notice of the time and place of the sale by advertisement as required by law, * * * and after a full compliance with all other requirements of law did offer the said property for sale at public auction, at the time and place mentioned in said advertisement. * * * And, whereas, at the said sale, the said property was * * * sold to J. G. Gray: * * * Now, therefore, in consideration of the premises aforesaid, and of the payment of the said sum of $74,050, I * * * sheriff, * * * convey unto the said Gray * * * the above-described property, * * * to have and to hold * * * as fully and as absolutely as I, * * * sheriff aforesaid, can convey by virtue of said writ of fieri facias.”
In June following Gray and Vincent enter ed into a contract by notarial act, “for the purpose” (as therein declared) “of preventing litigation, and in order to adjust their differences,” whereby Vincent ratified and approved the adjudication so made and transferred and delivered to Gray all fencing on the property embraced in the adjudication as well as all fencing now (then) under seizure under alias writs of fi.. fa., issued in the aforementioned suit, and sold certain additional tracts of land to Gray, who further agreed to buy still other tracts from Mrs. Vincent, and released and discharged Vincent from all further liability under the judgment in question. And it may be stated, in this connection,’ the Perrys also, as we infer, were similarly discharged, upon payment of large sums of money, after which, they appear to have parted with their interest in and to have severed their connection with, the Vinton Company. Vincent thereafter went to Texas, where he remained for nearly two years, and the company became moribund, and so continued until it was revived by him, some six years later, for the purpose of bringing this suit. He says, in his testimony, that there was one meeting of the board of directors in 1905, and none after that, until March, 1911; and he further testified as follows, to wit:
“When I returned here from San Antonio, about the latter part of the year 1907, I also felt like the proceedings were not legal” (referring to the proceedings in the suit of Gray v. Vincent et al.), “and I employed Messrs. Williams & Williams and the present Judge Barbe to examine that record, to go ah over it, and see whether or not I had any right of action against Mr. Gray or the Perrys. I paid an advance fee of $50 for that work to Mr. Jim Williams. Afterwards Mr. Williams came back and reported to me that the proces verbal of the sale of my property was missing from the record.”
He appears then to have consulted another attorney, with whom he had some negotiations, concerning which he says:
“He made certain statements to me that the proceedings were not legal, and that, if I would employ him, he would recover that property. Q. For the company? A. Yes, sir; for the company.”
Nothing further was done in the matter at that time, but in the meanwhile Vincent had become interested with Spring, by whom some of the lands which he had conveyed to *1056 Gray, by the ratification contract of June, 1905, were held under an oil lease, and he appears to have aided Spring in keeping Gray out of that property, until it was awarded to him by judgment of this court, handed down in June, 1911, and which became final in October of that year. 129 La. 345, 56 South. 305, Ann. Cas. 1913B, 372. The case had, however, been decided adversely to Spring in the district court; and in February, 1911, Vincent again turned his attention to the matters here involved, and revived the Vinton Company by calling a meeting of the stockholders, which convened on March 11, 1911, and elected a board of directors, consisting of Vincent, several members of his family, and his attorney, and which was followed by a directors’ meeting at which Vincent was elected president. Mr. Vincent testifies that he owns two-thirds of the stock of the company, and the evidence justifies the inference that this suit has been brought at his instigation and mainly for his benefit.
The petition herein filed alleges that plaintiff is the legal owner of an undivided half interest in certain tracts of land, which it describes, and which are the tracts constituting the 4,688.05 acres formerly owned in indivisión by Gray and Vincent and adjudicated to Gray, as above stated, and of which he had remained in quiet possession from the date of the adjudication until he was disturbed by the citation herein issued. It further alleges that:.
“John Geddings Gray * * * claims the ownership of said property under a pretended sheriff’s deed, in suit entitled John G. Gray v. Aladin Vincent et al., which pretends to convey to said Gray, for a consideration of $74, 050, credited upon a money judgment in favor of Gray, large tracts of land, the value of which, at the time of said pretended sheriff’s sale, was five times that of the undivided half interest hereinabove described; that said sheriff’s deed does not pretend to convey petitioner’s said interest in said property; that the sheriff, in executing said deed and in conducting the proceedings upon which said deed was based, did so without any authority whatever in so far as petitioner’s said interest in said property is concerned; and that, for these reasons, said pretended sheriff’s deed shpuld be declared null, void, and of no effect, in so far as petitioner’s said interest in said property may be concerned. Petitioner further shows that said deed and the judgment upon which it is pretended to be based are null and void, as to petitioner and said land, because petitioner was never legally served with a legal citation by an officer authorized by law to serve process. Petitioner further shows that said Gray has been, since January 1, 1905, in actual, physical possession of the above-described property, in bad faith, without warrant or title in law. Petitioner further shows that the rental value of said property is $5,000 per annum, which annual rental petitioner is entitled to recover from said defendant, from January 1, 1905; * * * that, in addition to said fixed rental, said Gray owes to petitioner an accounting as to all moneys received by him as bonuses for oil leases and for other speculations with reference to said land, during the Vinton oil boom of 1909, 1910, and 1911, which accounting, petitioner alleges,, will show said Gray to be indebted to petitioner, in addition to the rental aforesaid, in excess of $20,000.”
Petitioner prays for judgment —
“decreeing said pretended judgment and sheriff’s deed to be null, void, and of no effect whatever.in so far as petitioner’s said undivided half interest in said property is concerned, and recognizing petitioner as the owner of an undivided half interest in the property hereinbefore described.”
And there is a further prayer for rental, accounting, etc. To all of which defendant pleaded estoppel and prescription, and answered, setting up, in part, the facts which have been hereinabove stated, and others, and praying that plaintiff’s -demands be rejected, or, in the event of there being judgment in plaintiff’s favor, that defendant have judgment against plaintiff for $200,000, with interest, etc.
Upon the trial of the case, plaintiff offered in evidence the transcript of the record in the case of Gray v. Vincent et al. (included in the transcript of Gray v. Spring, also offered, and wherein is to be found the judgment and sheriff’s deed which are here made the objects of attack). It also offered certain oral testimony, with a view of sustaining its allegations that the judgment in question was rendered without citation and that the *1058 sale by the sheriff was made without authority. It was shown that the plaintiff company was and is domiciled in the parish of Calcasieu ; that Aladin Vincent was and is its president (it never having had any other); that he was present when the seized property was adjudicated to defendant; and that it was agreed between defendant and himself that the property would sell to better advantage if sold as it was sold, to wit, certain lots separately, and others together. Mr. Vincent, under examination by plaintiff’s counsel, testified that he was never served with any papers “directed against the Vinton Oil & Sulphur Company at Vinton,” and that, so far as he knew, the company was never served with any notice of seizure in the “foreclosure proceeding.” But she also testified that he was president of the company, and was present at the sale of the property, and (on cross-examination) further, as follows:
“Q. Now, where were you when the. citation was served on you? A. When the citation was served? Q. Yes. A. I am not sure that I remember — not sure that I remember where I was; but, having this agreement with Mr. Gray, it didn’t worry me a particle, the serving of the papers on me, because I thought it was simply a matter of form. Q. You were president of the Vinton Oil & Sulphur Company, Limited, at that time? A. Yes, sir. Q. How long was that after this conversation took place here in Lake Charles? A. You mean the citation? Q. Yes, sir. A. I don’t remember — I can’t remember the date, but it wasn’t long afterwards. * * * Q. At the time this notice was served on you — citation—and shortly before that, who were the stockholders of the Vinton Oil & Sulphur Company? A. Up to the time the citation was served on me? Q. Yes, sir. A. Alexander Perry, Joseph L. Perry, Wm. M. Perkins, W. IÜ. Stern, and myself.”
There is also other testimony to the effect that, in consequence of the understanding, to which he refers, with Gray, he employed no attorney and allowed Gray to take his judgment by default. The testimony in regard to the absence of a writ of fieri facias is not more convincing. It appears that the courthouse in Calcasieu parish was destroyed by fire, and that the record of the case in question was burned with it; but the only testimony as to the absence from the record, before the fire, of the writ of fieri facias, is that given by Mr. Williams, the attorney whose name has been mentioned, and who testifies that he looked for it on three occasions and was unable to find it, to which is added the circumstance that it was not transcribed, with other parts of the record, in the case of Gray v. Spring. It does not appear, however, that Mr. Williams made any inquiry of the sheriff or the clerk, or examined the dockets of either, in order to ascertain whether such a writ had been issued; nor does it appear, with any certainty, that Vincent or the plaintiff, then or since, acted upon any information thus received; the allegation of the petition herein, filed in September, 1912, being merely that the sheriff was unauthorized to make the sale in question', so far as the one undivided half interest in the property (the whole of which was owned by plaintiff, and was sold) was concerned, and neither the testimony por the argument having made it clear to us what was intended by that allegation at the time that it was made. The judge a quo, in his reasons for judgment, says:
“The record” (referring to the record in Gray v. Vincent et al.) “and all the proceedings were destroyed by the fire of April, 1910, which burned the courthouse. Plaintiff has attempted to prove a negative” (that there was no citation and no writ of fieri facias), “though not called upon, as a matter of law, to do so. The evidence offered has some slight tendency to establish the negative.”
Which is about as much as can be said for the attempt referred to. On the other hand, the advertisement, pursuant to which the sale here attacked was made, is in the transcript, and contains the recital:
“By virtue of a writ of fieri facias, * * * I have seized and will offer for sale,” etc.
*1060 And the sheriff’s deed, also in the transcript as part of plaintiff’s evidence, contains similar recitals — to the effect that the sheriff acted under the authority of a writ of fieri facias, and otherwise and in every respect according to law.
The judge a quo gave judgment decreeing the nullity of the sheriff’s sale, in so far as it purports to affect the sale of the one undivided half interest in the property which is here claimed by plaintiff, decreeing plaintiff to be the owner of said interest, dismissing its demand for rents, royalties, and bonuses as in case of nonsuit, and (probably through inadvertence) failed so to dismiss the demand for nullity of judgment. The alternative reconventional demand set up by defendant was also dismissed. Defendant has appealed, and plaintiff has answered, praying that the judgment be amended so as to make it a judgment of nonsuit as to its demand for nullity of the judgment, and a final judgment as to defendant’s alternative reconventional demand.
Opinion.
[1-3] 1. It is evident that the sheriff’s sale, which prima facie devested the title here set up by plaintiff, and vested it in defendant, and which plaintiff here attacks, must be annulled before plaintiff can succeed in the demand of its petitory action that it be recognized as the owner of the property, and equally evident that, if the nullity charged be not of the absolute character that would authorize the court to disregard the sale entirely, but is merely relative, and presents a matter for adjudication, the sale cannot be annulled unless all the parties in interest' are before the court. And it is partly with reference to the contingency thus suggested that this court has held that, where a plaintiff has cumulated an action of nullity with his petitory action, “he assumes the risk”; that is to say, he may cumulate those actions if it so pleases him, as he may cumulate, against the same defendant, any other actions not conflicting with each other, of which the court may have jurisdiction. But, if it should thereafter be found, with respect to the demand for nullity — being the main demand, upon which the other is dependent — that it presents a matter for adjudication, and that all the parties entitled to be heard are not before the court, or that the court is without jurisdiction, the whole proceeding may or must be dismissed.
In Beland and Johnson v. Gebelin, 46 La. Ann. 326, 14 South. 843, it was said:
“The plaintiffs in this case have not cumulated with the petitory action proper actions of nullity against _ the various proceedings alluded to in the pleadings and made parties accordingly, for the reason that the theory of their case is that all those proceedings are absolute nullities needing no judicial action to set them aside; that they are void, not voidable. The allegations of the petition are to that effect. If the plaintiffs think proper to go into this case on ihat basis, on the strength of the correctness of their legal conclusions on that subject, they have, at their own risk, the right to do so. Should it turn out on inquiry that the proceedings alluded to were not void, as claimed, but simply voidable, and the case should be before the court without proper parties and the proper prayer, plaintiffs will take nothing by their action.”
See, also, Dauterive v. Opera House Association, 46 La. Ann. 1322, 16 South. 170; Mays v. Witkowski, 46 La. Ann. 1475, 16 South. 478; Callahan v. Fluker, 47 La. Ann. 427, 16 South. 943; Jewell v. De Blanc, 110 La. 820, 34 South. 787; Smith v. Krause & Managan Lumber Co., 125 La. 703, 51 South. 693.
In Bankston v. Owl Bayou Cypress Co., 117 La. 1054, 42 South. 500, it was held (quoting from the syllabus):
“Plaintiff, in bringing a petitory action, is not necessarily forced to cumulate therewith an action of nullity to set aside judicial proceedings in which apparently his title to the property has been devested. He has the right' at his own risk to allege such proceedings to be absolute nullities and to go to trial on that issue; but, if the proceedings are not void, he is thrown *1062 back upon bis original remedies. In the present instance, prior proceedings are utterly ignored. They were not void, and stand until set aside by a direct action. They could not be collaterally attacked in the petitory action.”
In the instant case it is not alleged that the judgment and sale which are attacked are absolutely null, and the evidence does not show that they are. Hence, to have annulled either, it would have been necessary to have had all the parties thereto before the court. The demand for the nullity of the judgment was, however, ignored by the judge a quo, though we infer that he intended to dismiss it, as in case of nonsuit; and the matter of the demand for the nullity of the sale appears to present different conditions, the obligations, if any, of Vincent and the Perrys, with respect to the sale, being apparently rather those of warrantors.
[4] 2. Plaintiff’s allegations in support of the charges that the judgment and sheriff’s sale, under which plaintiff appears to have acquired title, are null, as to it and as to the interest in the land sold which it here claims, are that:
“Petitioner wás never legally served with a legal citation by an officer authorized by law to serve procSs.”
And that:
“The sheriff, in executing said deed and in conducting the proceedings upon which said deed was based, did so without any authority whatever, in so far as petitioner’s said interest in said property is concerned.”
It will be observed that the allegation in regard to the citation does not charge that there was no citation, but is, in effect^ that the citation, as served, was illegal, ¡and was not served by a competent officer. As to the character of the citation, no evidence was offered, though the president of the company admitted that citation was served. As to the competence of the officer by whom it was served, it was shown that the coroner of the parish was, ¡at one time, acting in place of the sheriff, and that there was some correspondence between him and the Governor as to whether the occasion was one upon which he was authorized to act, or upon which the Governor was authorized to appoint, the result of which appears to have been that the coroner, claiming the right under the law, continued to act as sheriff de facto. The mere allegation of illegality and irregularity, and particularly in the absence of any allegation that same was not cured by appearance or ratification, does not destroy the presumption of legality and regularity created by the judgment.
“Where judgment appears to have been rendered on a citation, it devolves on plaintiff, in an action of nullity, not only to allege the want of citation, but that he had not cured, by appearance or plea, the illegality of the citation.” Cross on Pleading, p. 116.
“Where plaintiff enjoins the execution of a judgment as being null for want of citation, the fact that there was no citation involves a negative, yet it is material to plaintiff’s case and he must allege and prove it.” Id. 93.
The allegation, that the sheriff acted without authority, “in so far as petitioner’s said interest in said property is concerned,” is ambiguous, and leaves it open to plaintiff’s learned counsel to attempt to prove, and to argue, as they have done: (a) That the sheriff held no writ; (b) that the writ held by him did not authorize him to seize plaintiff’s property. We hardly think those positions tenable, unless pleaded in the alternative; but the point has not been raised, and we shall deal with the case as we find it.
The learned judge a quo says in his opinion:
“The answer impliedly admits plaintiff’s chain of title, but avers that defendant acquired title by said sheriff’s deed, and avers the validity of the judgment. * * * As the title to the land * * * is clearly vested in plaintiff, unless plaintiff’s title was devested by the sheriff’s sale, declared on by the defendant, it is necessary to inquire whether defendant has shown such, devestiture. * * * To show it, he must show a judgment, a writ of fieri facias, and the return of the sheriff thereon. Although the sheriff’s, deed may refer to a writ of fieri facias as its basis, this is not sufficient. The writ itself must be produced and offered in evidence, or, if' lost or .destroyed, it must be shown that it existed and issued regularly and what its con *1064 tents were. Hyman v. Bailey, 13 La. Ann. 450; Dede v. Boguille, 8 La. Ann. 138; Clarkston v. Vincent & Co., 32 La. Ann. 613. In this case the judgment was produced and filed in evidence, as well as the sheriff’s deed; but no writ has been produced or shown to have ever existed, and especially one directed against the plaintiff herein. It is even impossible to say, from the sheriff’s deed and from the advertisement of sale, whether the sheriff considered he had such a writ, directed against plaintiff, or in which plaintiff was mentioned as one whose property should be seized and sold.
“The record and all the proceedings were destroyed by the fire of April, 1910, which burned the courthouse. Plaintiff has attempted to prove a negative, though not called on to do so. The evidence offered has some slight tendency to establish the negative.”
There is no doubt that a plaintiff in a petitory action, undertaking to establish a title acquired at sheriff’s sale, must produce a judgment, writ, and return, as stated by our learned brother. It was so held in two of the three cases cited in his opinion. In the third case (Dede v. Boguille, 8 La. Ann. 138), the question of the burden of proof was not raised, and the judgment appears to have been influenced by the fact that the defendant, relying on a sheriff’s deed (to an usufruct), had not complied with his obligations as usufructuary, but had “suffered the property to go to decay,” and he was condemned in damages therefor. The defendant now before the court, however, is not plaintiff in a petitory action. I-Ie is defendant in a proceeding in which an action of nullity and a petitory action have been cumulated, and in which the plaintiff carries the burden of proof to establish the illegal acts and omissions which, it alleges, vitiate his title, and to establish in itself a better title than that which it has itself offered in evidence as the title under which defendant holds possession of the property. If the action of nullity stood alone, it would hardly be asserted that it would devolve on defendant to disprove plaintiff’s' allegations, still less could it be so asserted if the petitory action stood alone; and we know of no reason or principle which would justify us in holding that, by cumulat-1 ing the two actions, plaintiff has escaped any obligation resting upon it with respect to either. The title which plaintiff has offered as that under which defendant holds is a formal sheriff’s deed, which contains the recital that the sheriff, in making the sale in question, acted under a writ of fieri facias, and in all respects in conformity to law, and of which the law declares th.at it “shall be held as full proof of what it contains in all the courts of this state.” C. P. art. 698. Defendant was, therefore, required to do nothing save to meet such evidence as plaintiff might introduce to destroy the prima facie title, better than its own, which it had thus alleged and established.
“What allegations” (says a recognized authority) “are necessary to constitute a sufficient case is a question of substantive law; but whenever, under the rules of substantive law applicable to the rights or liabilities in dispute between the parties, an affirmative case requires proof of a material negative allegation, the party, whether plaintiff or defendant, has the burden of proving it, so far as is reasonably possible, even as to facts within the knowledge or control of the other side.” 16 Cyc. 927, 928.
In support of the proposition thus stated there are cited, among other cases, Hicks v. Martin, 9 Mart. (O. S.) 47, 13 Am. Dec. 304, in which it was charged by plaintiffs that defendant had removed a slave from Virginia, where the slave had been devised defendant as dower, in contravention of the laws of -that state, and that the right of dower h;ad thereby been forfeited, and in which this court dealt with the question of the burden of proof, as follows:
“We will inquire whether enough has been proved by the plaintiffs to establish the forfeiture on which they rely. By the same laws of Virginia, introduced in evidence by consent of parties, forfeiture, in a case like this, takes place when the widow removes the slave without the consent of the reversioner. The removal is proved, but the want of consent is not. Now, although it be a general rule that the negative is not to be proved, that rule does not apply to a case like the present. Where one party charges another with a culpable decision or breach of duty, the person who claims the damage is bound to prove it, though it may involve a neg *1066 ative; for, it is one of the first principles of justice, not to presume that a person has acted illegally till the contrary is proved. Phillips, Evidence, c. 7, § 4, and the authorities to which he refers.”
Mr. Cross, in his work on Pleading, says:
“And it is said, in general terms, that while plaintiff need not allege the nonexistence of facts that might defeat his action, he must allege facts material to his case, although it involves a negative.” Cross on Pleading, p. 93.
At another place, the same author, after quoting from the opinion in Hicks v. Martin, supra, to the effect that “it is one of the first principles of justice not to presume that a person has acted illegally,” continues as follows:
“And the’ first rule, which imposes the burden of pleading on him for whose interest the proof should be made, suffers exception when the plaintiff’s right rests on the showing that defendant has been guilty of wrongdoing, or where the acts of a public officer are questioned. In such case he must allege, though the proposition is negative, not only in form, but in substance. So, where a judgment appears to have been rendered on a citation, it devolves on plaintiff in the action of nullity, not only to allege the want of citation, but that he had not cured, by appearance or plea, the illegality of the citation.” Cross on Pleading’, pp. 93, 116.
In Baird v. Brown, 28 La. Ann. 842, in which plaintiff enjoined the execution of a writ of seizure and sale, on the ground (inter alia) that “no notice of the order of seizure and sale and of the seizure had been served by any competent officer,” this court said:
“The plaintiff contends that, as the reason for the injunction * * * involves a negative, the defendant should have shown that there was a notice of the order of seizure and sale served upon him. This is an error. One of the first principles of justice is not to presume that one has acted illegally, or has failed to do his duty. [Hicks v. Martin] 9 Mart. (O. S.) 48 [13 Am. Dec. 304]; [Hubbell v. Clannon] 13 La. 493; [Gibson v. Foster] 2 La. Ann. 503; [Nichols v. McCall] 13 La. Ann. 215; [Gentile v. Foley] 2 La. Ann. 146. The burden of proof is on the party who alleges a breach of duty, even though it involves a negative. [Morgan v. Mitchell] 3 Mart. (N. S.) 576; 1 Green, §§ 78, 80; [Hood v. Dahlgreen] 6 La. Ann. 175.”
In Nichols v. McCall, 13 La. Ann. 215, it was held (quoting syllabus):
“Where the sheriff’s return and the deed of, sale made by him to the purchaser of property at a sheriff’s sale set forth that notice of seizure was served on the parties, the burden of proof rests on the party attacking the sale to show the falsity of such recitals, although it involves the proof of a negative.”
The general propositions, that judicial proceedings are presumed to be regular until the contrary be shown, that a sheriff’s return or deed constitutes prima facie evidence constituting full proof, and prevails until rebutted, that an. allegation material to a cause, whether affirmative or negative, must be made and must be sustained by him who makes it, and that the burden of proof is on the party who alleges a breach of duty, and particularly in a sworn public officer, even though it involves a negative, are, we think, based upon reason and authority, and support, the conclusion that the burden rested upon the plaintiff herein to prove that the judgment which it attacks was predicated upon an illegal citation, or a citation served by an incompetent person, and that the sale so attacked was made by the sheriff without proper authority. Hen. Dig. vol. 1, p. 489, No. 2, p. 490, No. 17; C. P. art. 698: Brashears v. Barrabino et al., 8 Mart. (O. S.) 682; Fleming v. Conrad, 11 Mart. (O. S.) 301; Morgan v. Mitchell, 3 Mart. (N. 8.) 576; Lafon v. Smith et al., 3 La. 476; Perron v. Maillan, 10 La. 520; Hubbell v. Clannon, 13 La. 496; Alling et al. v. Beamis, 15 La. 390; Brosnaham et al. v. Turner, 16 La. 441; Gibson et al. v. Foster et al., 2 La. Ann. 503; Gentile v. Foley, 3 La. Ann. 146; Hewitt v. Stephens, 5 La. Ann. 640; Fortier v. Zimpel, 6 La. Ann. 55; Hood v. Dahlgreen, 6 La. Ann. 175; Nichols & Morse v. McCall, 13 La. Ann. 215; Delespare v. Warner, 14 La. Ann. 413; Howell v. City, 28 La. Ann. 681; Baird v. Brown, 28 La. Ann. 842; Elder v. City, 31 La. Ann. 500; Soniat v. Miles et al., 32 La. Ann. 164; Stevenson v. Whitney, 33 La. Ann. 655; Sage v. Board, 37 La. Ann. 415; Succession of Herber, 117 La. 239, 41 South. 559; *1068 Thibodaux v. Barrow, 129 La. 401, 56 South. 339.
3. Counsel for plaintiff argue in effect that, because there was no personal judgment against plaintiff, there could have been no writ of execution issued against it, and that, without a writ directed against it eo nomine, the sheriff was without authority to seize and sell its property. But the proposition does not state the whole case, and, even as stated, the premises do not sustain the conclusion. The facts are that plaintiff had incurred no personal liability (if the term “personal” can be so applied). It had acquired the entire property, the undivided half of which it is here claiming, subject to a mortgage upon the other undivided half interest securing a debt, in a very large sum, which was due for the price, and it had thereafter, in consideration of the extension of the terms of payment of the debt and of a reduction in the rate of interest thereon, imposed an additional and independent mortgage upon the entire property, for the further security of that debt, and, in the act by which the mortgage was imposed, had expressly stipulated and agreed that, in the event of the maturity (and nonpayment) of the debt as thus extended:
“The mortgagor does hereby authorize said mortgagee * * * to 'cause all and singular the property, described and herein mortgaged, to be sold, under executory process or other process.”
When, therefore, the event thus provided for occurred, the mortgagee brought suit and caused his debtors, Vincent and the Perrys, to be cited in order that his claim against them personally, and the property, should be judicially recognized and enforced, and caused plaintiff to be cited, not to answer a demand for a personal judgment, since his contract did not authorize such demand, but in order that, contradictorily with plaintiff, his claim against its property might be judicially recognized and enforced. The prayer of the petition reads:
“Wherefore petitioner prays that Aladin Vincent, Alexander Perry, and Jos. L. Perry and the Vinton Oil & Sulphur Company, Limited, be cited to answer hereto; prays that * * * petitioner do have and recover judgment against said Aladin Vincent, Alexander Perry, and Jos. L. Perry, in sqlido, in the sum of $200,000, with interest; * * * prays that vendor’s lien and mortgage in favor of petitioner upon the undivided one-half interest in the land described in the foregoing petition be recognized and rendered executory; prays that petitioner’s mortgage upon the said entire above-described tract of land be recognized and rendered executory in the sum of $200,000, with interest; * * * prays that the said property be ordered seized and sold to pay and satisfy petitioner’s demand in the premises.”
The contracts sued on were annexed to and made part of the petition, and, contradictorily with plaintiff (upon issue joined by default), there was judgment in accordance with those contracts, importing confessions of judgment, and with the prayer of the petition ; that is to say, there was judgment against Vincent and the Perrys, in solido, for $200,000, with interest, etc., against them and the Vinton Company, recognizing and rendering executory the original mortgage and vendor’s lien which incumbered an undivided half interest in the land when plaintiff acquired it, and recognizing and rendering executory, in the sum of $200,000, with interest, etc., the mortgage, upon the entire tract, which had been granted by plaintiff; and the entire tract, as described in the petition, was ordered to be seized and sold to pay and satisfy the judgment. If plaintiff had any objection to make to the terms of the judgment, it should have made them by motion for new trial or on appeal. If it had any objection to make to the execution of a writ issued in accordance with those terms, it should have made them when the execution took place; for, being (according to its charter) domiciled and present in the parish, and suffering the execution to proceed, it thereby forfeited its right to make them; and, remaining silent thereafter for more than five years, its right to attack the sale made by the sheriff for the purposes of the execution, upon the *1070 grounds involved in the proposition now under consideration, became barred by the prescription of five years. And the same may be said of the objection (not covered by the petition, but presented in argument, as having appeared in the testimony), that the mortgaged land (in whole or in part) was sold confusedly with certain- tracts belonging to Yincent individually — the facts in that connection being that, Yincent, plaintiffs president, being present at the sale, it was agreed between him and Gray that the land would bring a better price, if sold in certain combinations, than if the whole body under seizure were sold together; that there is no intimation in the evidence that plaintiff was prejudiced by that agreement, or by the action taken under it; that the amount received for all the land (that belonging to plaintiff and that belonging to Vincent) was only $74,-050, as against a judgment debt of $200,000; that Vincent, who was not only plaintiff’s president, but the owner of two-thirds of its stock, and himself a judgment debtor, was present at the sale, made no objection to it, thereafter ratified it by notarial act, and now, with his family, appears to own 99 per cent, of the stock; and that the Perrys, who owned the remaining one-third of the stock (save a few shares held by other persons, who participated in the incorporation of the company), also ratified said sale. C. P. art. 612; C. C. art. 3543; Blanchard v. Allain, 5 La. Ann. 367, 52 Am. Dec. 594; Gottschalk v. De Santos, 12 La. Ann. 475; Cane v. Sewell, 34 La. Ann. 1096; Parson v. Henry, 43 La. Ann. 307, 8 South. 918; Union Nat. Bank v. Life Ins. Co., 52 La. Ann. 36, 26 South. 800; Nagle v. Clement, 113 La. 192, 36 South. 935; Chaffe v. Minden Lumber Co., 118 La. 756, 43 South. 397; Estrade et al. v. Kaack, 126 La. 26, 52 South. 181; Carrere v. Aucoin, 127 La. 64, 65, 53 South. 427; Thibodaux v. Barrow, 129 La. 395, 56 South. 339; J. J. McCaskill Co. v. United States, 216 U. S. 504, 30 Sup. Ct. 386, 54 L. Ed. 590; 10 Cyc. 1059, 1065.
The general proposition that, though the right'to annul a judgment is not restricted to the eases enumerated in C. P. arts. 606, 607, and 613, such relief will not be granted in other cases where it appears that the party seeking it was guilty of laches in permitting the judgment to be rendered and executed, and that others have acquired rights growing out of such execution, iá commonly accepted. Norris v. Fristoe, 3 La. Ann. 646; Swain v. Sampson, 6 La. Ann. 799; Bory v. Knox, 38 La. Ann. 379; Succession of Corrigan, 42 La. Ann. 65, 7 South. 74.
Our conclusion, then, is that upon no theory that has been suggested, whether of law or equity, is plaintiff entitled to recover.
It is therefore ordered and decreed that the judgment appealed from be set aside and annulled, that plaintiff’s demands be rejected, and that this suit be dismissed, at its cost in both courts.