**JONES v. ALFORD.**

No. 5398.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1937.

Irwin & Cowles, of Shreveport, for appellant.

Jackson & Smith and Chas. L. Mayer, all of Shreveport, for appellee.

DREW, Judge.

This is a suit by plaintiff to have set aside and declared null and void a sale of 29 acres of land under execution on a judgment. The 29 acres of land involved here were acquired by plaintiff from his sister by donatio mortis causa. In March, 1934, defendant herein, D. E. Alford, filed suit in the justice of peace court in ward 6, Bossier parish, La., against the plaintiff herein, Jim Jones, and recovered judgment by default in the sum of $75, being the purchase price of a mule sold to plaintiff by defendant. After this judgment became executory, in April of the same year the constable, J. F. Hayes, seized the 29 acres of land involved, advertised same for sale to satisfy said judgment, and, on May 26, 1934, purported to sell the property to D. E. Alford, the defendant herein.

On February 19, 1936, the present suit was filed by Jones to set aside the sale to Alford. The nullities alleged by Jones are: That no proper writ of fieri facias issued directing and authorizing the seizure of the property; and no notice to appoint appraisers was given the judgment debtor, as required by law, and there was no compliance with the law in that respect, as provided by article 671 of the Code of Practice, or sections 64, 576, and 3426 of the Revised Statutes of Louisiana of the year 1870. Plaintiff further alleged that at the time of seizure he owned sufficient personal property subject to seizure to have satisfied the judgment, all of which the constable had personal knowledge.

Defendant in answer admits that plaintiff acquired the property as alleged by him; that defendant obtained judgment against plaintiff for $75, as alleged, and that the constable seized the 29 acres of land, advertised same for sale, and sold it to defendant for $100, which was two-thirds of the appraised value; that the property was appraised by defendant and an appraiser appointed by the constable. Further answering, all the material allegations of the petition are denied, and

affirm that a fieri facias was issued and notice of seizure given. He alleged the fieri facias and notice of seizure had been lost, misplaced, or destroyed by the justice of peace and could not be found. He denied that plaintiff owned sufficient movable property subject to seizure and sale to satisfy the judgment; and also alleged that plaintiff had knowledge of the sale and date on which it was to take place, and made no appearance to appoint an appraiser. Defendant does not allege that written notice to appear and appoint an appraiser was ever served upon plaintiff. He further pleads estoppel as to the allegations concerning the movable property owned by plaintiff sufficient to satisfy the judgment, for the reason that plaintiff did not point out said property to the constable at the time of seizure and did not oppose the sale of his real estate. Defendant further pleads estoppel against plaintiff for the alleged reason that, after the sale at public auction to defendant, plaintiff ratified, confirmed, and validated said sale and acknowledged that defendant had a good title by offering to buy said property from defendant.

On these issues the case was tried below, resulting in judgment for plaintiff as prayed for; from said judgment defendant prosecutes this appeal.

The record as made up convinces us that a writ of fieri facias, authorizing the seizure and sale of the property involved, never issued, and it is admitted that a written notice to the plaintiff herein to appear and appoint an appraiser was never served on him, although his place of abode is well known to the constable. Our finding on these two allegations of nullity is sufficient for a decision of the case, unless the plea of estoppel is good and makes it unnecessary to discuss the other issues raised.

Article 671 of the Code of Practice requires that ten days before proceeding to the sale of the property seized, if it consists of movables, the sheriff shall summon the party whose effects are seized by a written notice, delivered to him in person or left at his usual place of residence, to appear on the day, place, and hour which he shall mention to him, for the purpose of naming an appraiser of the property to be thus sold.

Article 1145 of the Code of Practice provides that all property siezed under writs of justices of peace, whether same be movable or immovable, shall be appraised

and sold in the same manner as property seized and sold by sheriffs.

In the former part of our opinion, we referred also to sections 64, 576, and 3426 of the Revised Statutes of Louisiana of 1870, which provide for a notice of only two days to the plaintiff to appoint an appraiser. We referred to these provisions for the reason there is an apparent conflict in the decisions of our Supreme Court as to the number of days before the sale the defendant in execution is entitled to have notice to appoint an appraiser; and in the case of Crowley Bank & Trust Company v. Hurd, 138 La. 978, 71 So. 128, the Supreme Court of this state held that the provisions of the Code of Practice prevailed over the Revised Statutes, basing its decision upon section 3990 of the Revised Statutes, which is the concluding section. In a later case, namely, Mulling v. Jones, 153 La. 1091, 97 So. 202, without any mention being made of a change in the law, if it had been changed, or any reference to the former case cited, the same court found the sections of the Revised Statutes prevailed and the defendant in execution was only required to have two days' notice in which to appoint an appraiser. However, it is immaterial to this case which law prevails, for it is admitted that the constable did not comply with either. We have, therefore, not attempted to find a reason for the last decision cited. It suffices here that both decisions hold that failure of the constable to summon the defendant in execution by a written notice to appear and appoint an appraiser strikes the sale made under said execution with nullity. Also see Farrell v. Klumpp, 13 La. Ann. 311.

Under our law, parties cannot be deprived of their property without a strict compliance with the law.

We are not unmindful of the decision holding that, if a sheriff's return shows that the property was sold "after having same appraised," it will be presumed there was a legal appraisement, unless the contrary be shown. In this case the contrary was not only shown but admitted by the constable.

As previously stated, we find a writ of fieri facias was not issued in the case of Alford v. Jones, under which judgment the 29 acres involved here were sold. In so holding, we are not overlooking article 698 of the Code of Practice which provides that a sheriff's deed, when recorded and delivered to the purchaser, shall be held as full proof of what it contains, in all the courts of this state, in the same manner as an act before a notary public would, or the decisions in the cases of Scott v. Gordon, 184 La. 1017, 168 So. 134, and Vinton Oil Company v. Gray, 135 La. 1049, 66 So. 357, and many others which hold that regularity in making judicial sales is always presumed, because the law presumes that those things were done which it has commanded to be done, as was specifically stated in Federal Land Bank of New Orleans v. Scallan, 179 La. 636, 154 So. 632. In the Vinton Oil Company v. Gray Case, above cited, the court held that, where the sheriff's deed recites that the sale evidenced thereby was made under a fieri facias, plaintiff attacking the adjudicatee's title on the ground that no fieri facias was issued, or that it did not authorize the sale, must so allege and prove. In the present case the constable's deed does recite that a fieri facias issued in the case, authorizing and commanding him to seize and sell the property of plaintiff herein. However, the proof shows to the contrary. The records of the justice of peace who tried the case, a photostatic copy of which is in the transcript, fails to show that the fieri facias was issued. The justice of peace was in court as a witness for defendant, was placed upon the stand by him and withdrawn without asking him any questions or submitting him for cross-examination. The notice of seizure, a copy of which is in evidence, shows that the constable made on the back thereof the return he should have made on the writ of fieri facias, if he had one. The return reads as follows:

"Received this writ on the 16th day of April, 1934, and on same day executed by seizing and taking into my possession 29 acres of the southeast ¼ and the southeast ¼ of Section 10, Township 11, Range 11, in Ward 6 of Bossier Parish, the property of Jim Jones.

"[Signed] J. F. Hayes
"Constable."

We are convinced from the testimony of the constable that the only paper given to him after the judgment became executory was the notice of seizure, which he thought was a writ of fieri facias. The only return made by him was the return on the notice of seizure. We are satisfied from his testimony he did not know the difference between a writ of fieri facias

and a notice of seizure. He testified that the notice of seizure and the return thereon reflected everything he had done at the time of seizure. In answer to a question propounded by plaintiff's counsel, he stated: "I went and served the notice of seizure, that was handed to me—made the seizure under the writ of seizure and went and give Jim one."

It is very clear to our minds that the only paper ever given to the constable was the notice of seizure, which he understood to be a writ of seizure, and a fieri facias was never issued directing him to seize and sell the property of plaintiff. We are of the opinion that the burden which the law places upon plaintiff in cases of this kind has been overcome by the testimony in the record.

The most serious defense set up is that of estoppel, based upon the fact that plaintiff offered to purchase the property from defendant after the constable's sale was held. The only testimony on this point is that given by plaintiff himself. He testified that he did not know his property was going to sell, but thought defendant had taken it for the debt he owed for the mule; and, as he put it, "like plantation owners take mules for the debts when you leave a plantation." He did not know the property was advertised for sale and did not know it had been sold. He further testified as follows:

"Q. Did you ever send Doug Taylor, after the property was sold and bought in by Mr. Alford, to Mr. Alford on your behalf and try and buy the property back from him? A. Yes, sir, I sent him to Mr. Alford.

"Q. You sent Doug Taylor to Mr. Alford? A. Yes, sir.

"Q. Why did you send him to Mr. Alford? A. Well, I had several reasons why I sent him to Mr. Alford. The lease people kept running after me to lease the land, and I told them exactly how the land was, that Mr. Alford had taken this' land for the mule, and I got Doug Taylor to go and see Mr. Alford and see if he would take his money.

"Q. If he would take the money, you wanted him to give you a deed back to the property? A. I did not know that it was sold. I thought that he took it for the mule.

"Q. You knew that the title to the property was in Mr. Alford, didn't you—that he owned the land? A. Yes, sir, knew that he had it in his possession, the lease people said he had the 29 acres in his possession, he took the land in his possession. * * *

"Q. You said that you knew that he had taken possession? A. That is what he had taken in his possession, the 29 acres.

"Q. When did you first find out that he had taken possession? A. When they gave me that paper.

"Q. You figured then you had lost it? A. I figured that he had taken it.

"Q. You did not take any steps to protect your title to that property after they served these papers? A. Yes, I tried to get the money.

"Q. You did not try to stop the suit? A. No, sir, I could not get the money.

"Q. Why did you let the suit go through? A. I could not help it. I could not do anything."

Under the above testimony, which is all, we are not impressed with the merits of the plea of estoppel. It is an evident fact that plaintiff did not know his property had been sold at public sale and purchased by defendant. He thought the property had been taken by defendant for payment of the mule and knew defendant had possession of it. With this thought in mind, he attempted through another negro to redeem his property. We do not think the action of plaintiff in attempting to redeem his property, under the circumstances, constituted a ratification or affirmance of the sale of his property to defendant. In order for plaintiff to be estopped from attacking the sale, the facts creating such waiver or estoppel must be clearly shown and established. We are of the opinion such facts have not been shown by defendant.

For the reason above given, the contention of defendant that plaintiff's inaction before the sale constituted an estoppel is without merit. The estoppel pleaded is founded upon fact and must be adjudged on fact. There is no equitable estoppel against a party who was ignorant of the real facts and of his legal rights in the premises. Succession of Drysdale, 130 La. 167, 57 So. 789; Watkins v. Cawthon, 33 La.Ann. 1194; Carroll v. Cockerham, 38 La.Ann. 813; Reed v. Eureka Homestead Society (La.App.) 143 So. 891.

The general rule is that one is not estopped by his conduct or representations

unless they have caused another to take a position or do something which he would not have taken or done but for such representations. Breaux v. Hanson Lumber Company, 125 La. 421, 51 So. 444, 446.

The record does not disclose that defendant has taken a position or done anything he would not have done had plaintiff not attempted to redeeem his land. International Projector Corporation v. Maricella (La.App.) 144 So. 278; Hebert v. Champagne, 144 La. 659, 81 So. 217.

The other contention of defendant is that plaintiff is bound by the recitals of the deed executed by the constable for the reason he offered it in evidence without any restrictions or qualifications. It is clear from the pleadings and the record that the deed was offered for a limited purpose, to wit, that of attacking it, and, when such is shown by the whole record, plaintiff cannot be bound by its recitals. Schwing v. Dunlap, 130 La. 498, 526, 58 So. 162.

We therefore conclude that the judgment of the lower court annulling and setting aside the deed made by the constable to defendant is correct, and the same is affirmed, with costs.